1817.

CLARKE *against* M'ANULTY.

IN ERROR.

*Monday,*
September 29.

Though the recognisance taken on an appeal from arbitrators is defective, yet if it has been acquiesced in for more than twelve months, in consequence of which the party has been put to expense, in preparing for trial, the objection to it comes too late. Where the narr. in covenant stated, that the defendant in consideration of 100 pounds paid him by the plaintiff, covenanted to warrant certain lands, that the plaintiff paid the 100 pounds, but the defendant had no title, *held* that the plaintiff could not give in evidence, a deed from him to the defendant, shewing that the plaintiff had given for the land other land,

ERROR to the Common Pleas of *Franklin* county.

*John M'Anulty*, the plaintiff below, brought this action of covenant to *January* Term, 1801, in which the *first count* of the declaration set forth, " that whereas the said *George* " *Clarke*, on the 27th day of *October*, in the year of our Lord, " 1783, at the county aforesaid, made his deed in writing, " with the proper hand of the said *George Clarke* signed, " and with his seal sealed, and which the said *John* here " into Court brings, whose date is the same day and year " aforesaid, by which deed of writing obligatory, the said " *George Clarke*, in consideration of the sum of *one hundred* " *pounds, in hand paid by the said John M'Anulty to the* " *said George Clarke*, he the said *George Clarke*, by the same " deed did grant, bargain and sell, unto the said *John* " *M'Anulty*, a certain tract of land in *Westmoreland* county, " on *Puckety's* creek, adjoining land of *John M'Math*, on the " west side, containing three hundred acres, more or less, " which said land, he the said *George Clarke* purchased of " *John M'Adoe*, as may appear by a bill of sale given under " the hand and seal of the said *John M'Adoe*, bearing date " the 11th day of *September*, in the year of our Lord, 1783, " by virtue of a fifty acre warrant, which he the said *John* " *M'Adoe*, had procured from the land office of the proprie- " tors of *Pennsylvania*, bearing date the 1st day of *August*, " in the year of our Lord, 1774; and the said *George Clarke*, " in and by the same deed, *did covenant, promise and agree*, " *to and with the said John M'Anulty, that he the said*

and property, of much greater value than 100 pounds.

Where in covenant for breach of warranty, the issue is joined on the title of the defendant, it is not necessary for the plaintiff to shew, that he took any measures to complete the title of the defendant.

A covenant of warranty is not broken without an eviction, which must be laid in the narr.

It is not a good assignment of a breach of warranty against all but the proprietary, that the defendant had no title; especially if it was known to both parties, that there was no more conveyed in the deed, than a right of pre-emption.

1817.

CLARKE
v.
M'ANULTY.

" *George Clarke, for himself, his heirs, and every of them,*
" *the aforesaid land and premises, viz. three hundred acres,*
" *more or less, described as aforesaid, to the said John*
" *M'Anulty and his heirs, would warrant and defend, from*
" *all persons laying lawful claim to the same, (the proprietors*
" *of the state of Pennsylvania only excepted,)* and the said
" *John M'Anulty* in fact saith, that he, relying upon the
" covenants and promises of the said *George Clarke*, as in
" and by the same deed set forth, he the said *John*
" *M'Anulty, did pay to the said George Clarke, the aforesaid*
" *one hundred pounds,* lawful money of *Pennsylvania*, the
" receipt whereof is in and by the said deed acknowledged
" by the said *George Clarke*, when in truth and in fact, the
" said *George Clarke*, at the time of the sale aforesaid, and
" date of the aforesaid deed, or at any time since, *had no*
" *title to any tract of land situated on Puckety's creek, ad-*
" *joining land of John M'Math, on the west side, containing*
" *three hundred acres more or less, in Westmoreland county,*
" *held by virtue of the aforesaid warrant, granted to John*
" *M'Adoe, as described in the deed from John M'Adoe to*
" *the said George Clarke, and in and by the deed from the*
" *said George Clarke to the said John M'Anulty.*"

The *second count* was on the sale of a lot in *Hannah's*
town, *Westmoreland* county, and was of the same tenor as
the first count, to which was added the following *conclusion:*
" and the said *John M'Anulty* further saith, that the said
" *George Clarke*, well knowing that the said *John* had paid
" the several sums of money, as set forth in the foregoing
" deeds executed by the said *George Clarke* to him, and ful-
" filled and performed the covenants and engagements on his
" part, as he was bound to do, yet the said *George Clarke on*
" *his part, hath not procured the title to the aforesaid lands,*
" *lots, and premises, as in and by the said several deeds de-*
" *scribed, nor hath he fulfilled and performed the several co-*
" *venants and agreements, as in and by the said several deeds*
" *set forth on his part to be performed, fulfilled, and kept,* but
" the same hath broken, whereupon, &c."

On the 27th *January*, 1807, the defendant pleaded cove-
nants performed, and *non infregit conventiones,* with leave
to give the special matter in evidence. To which the plaintiff
replied, that he hath broken his covenants; and issue was
joined.

CLARKE
v.
M'ANULTY.

1817.

Afterwards the suit was arbitrated, and an award was given on the 7th *August*, 1810, for the defendant. The plaintiff appealed, and on the 25th *August*, 1810; entered into a recognisance with sureties, upon condition, "that if "he does not recover, in the event of this suit, a sum, *as or* "*more favourable* than the report of arbitrators, then the re- "cognisors will pay all costs that shall accrue in conse- "quence of said appeal, and one dollar per day, for each and "every day lost by the defendant in attending such appeal; "*otherwise deliver the plaintiff to the jail of this county.*" The cause was set down for trial, and tried on the 11th *October*, 1811; prior to which, on the same day, the defend-ant moved to strike off the appeal; but the Court refused to do so.

On the trial, the plaintiff offered in evidence, a deed from him to the defendant, dated the 27th *October*, 1783, stating, that "in consideration of the sum of 30 pounds, specie, and "one wagon, and team of four horses, and one lot in *Hannah*'s "town, and one tract of land in *Westmoreland* county, paid "by the aforesaid *George Clarke* to the said *John M'Anul-* "*ty*, the receipt whereof is hereby acknowledged," *John M'Anulty* conveyed to *George Clarke*, a tract of 130 acres, in *Antrim* township, *Cumberland* county, with a warranty against all but the proprietors of *Pennsylvania*. To the ad-mission of this deed in evidence the defendant objected; but the objection was over-ruled by the Court, who sealed a bill of exceptions.

The defendant prayed the Court to charge the jury, that the plaintiff, *M'Anulty*, was bound to take the necessary steps to perfect his title to the 300 acres of land, and not having taken any steps for that purpose, nor made any attempt to obtain possession of the land, he could not re-cover in this action. But the Court, among other things, charged the jury, that if the title of *George Clarke*, conveyed to *John M'Anulty*, was not, in their opinion, a legal title to the 300 acres, *John M'Anulty* was not bound to shew any steps taken for the purpose aforesaid. Although there might be 300 acres at the place vacant, or in other parts of the state, *M'Anulty* was not bound to look after them. To this part of the charge the defendant excepted, and tendered ano-ther bill of exceptions. The jury found a verdict for the defendant, for 2000 dollars, for which judgment was given.

*M'Cullough* and *Watts*, for the plaintiff in error.

1. The award for the defendant is obligatory, because the recognisance entered into on the appeal, was not according to the act of assembly of 20th *March*, 1810, sect. 12. It is defective in two particulars ; the condition should have been, to pay the costs, unless the plaintiff recovered a greater sum; and it should also have been to pay the costs absolutely, and not in the alternative to pay them or surrender the plaintiff.

2. The deed from *M'Anulty* to *Clarke*, was not evidence in this suit. It was not relevant. Besides, the declaration avers, that the plaintiff gave 100 pounds for the land, but this deed shews, that he gave other property in exchange for it. This tended to produce a recovery of higher damages than otherwise would have been given ; the event shews the importance of this evidence, for the jury gave 2000 dollars damages.

3. The charge of the Court was wrong, in leaving it to the jury to decide, whether *Clarke* had a title ; and in saying, that it was not incumbent on the plaintiff to take any steps to perfect his title. There was vacant land to satisfy the warrant, which answered to its description.

4. We object to the declaration ; because it does not set out any covenant of seisin, or of title, but only of warranty ; and the breach assigned is, want of title. Under a covenant of warranty, the plaintiff must shew an eviction, before he can recover ; and all implied covenants are qualified by the express one. *Kent* v. *Welsh*,(a) *Greenby* v. *Wilcocks*,(b) *Vandercar* v. *Vandercar*.(c)

*Crawford* and *Chambers*, contra.

1. The informality in the recognisance was cured by an acquiescence under it, for upwards of a year, before any motion was made to dismiss the appeal. In *Cavence* v. *Butler*,(d) it was decided that an irregularity or informality in the special bail on an appeal, is waved by the party's appearing and pleading before referees.

2. The deed given in evidence had reference to the land in dispute : it bore the same date, and was part of the same transaction as the deed from defendant to plaintiff.

---

(a) 7 *Johns.* 258.        (c) 11 *Johns.* 125.
(b) 2 *Johns.* 1.           (d) 6 *Binn.* 52.

1817.

CLARKE

v.

M'ANULTY.

3. The charge of the Court was right. It was to no purpose to prosecute a bad title.

4. No particular words are necessary to make a covenant of seisin. 3 *Cruise*, 32. 1 *Vez.* 516. 1 *Powell on Cont.* 152. 1 *Esp. Dig. 2d part*, 115. *Gould's Ed.* 1 *Roll's Abr.* 518. Here the deed of the defendant recites, that *M·Adoe* had procured the land by virtue of a fifty acre warrant, and had sold to *Clarke*. This amounts to a covenant of title. Recitals amount to a warranty of the thing recited. 1 *Pow. on Cont.* 237. 1 *Esp. Dig.* 116. *Sugden*, 380, 381. A covenant of warranty, and a covenant of seisin, are on the same footing in *Pennsylvania*. In *New York*, the law is different, because chancery will give relief, on a covenant of warranty, where there is no eviction. In *Hamilton* v. *Cutts's exrs.*(a) it was held, that on a conveyance of land with a covenant of warranty, the grantee may recover without eviction, by suit: he may give up the land, if the title is not good; but he gives it up at his peril, and must prove that he yielded to a better title. They cited also *Chipman's Rep. (Vermont,)* 68.

TILGHMAN C. J. While this cause was depending in the Court of Common Pleas, it was submitted to arbitrators, who made an award in favour of *Clarke*, the defendant. The plaintiff, *M'Anulty*, appealed from the award, and entered into a recognisance, with security.

1. It is objected, that this recognisance was not according to law, and therefore the appeal was not well entered. The act of 20th *March*, 1810, § 12. directs, that where the plaintiff appeals, he shall be bound in a recognisance with sureties, the condition of which shall be, " that if he shall not recover, in the event of the suit, *a sum greater*, or a judgment *more favourable* than the report of the arbitrators, he shall pay all costs that shall accrue in consequence of the said appeal, &c." The condition of the recognisance in this case is, " that if the plaintiff *does not* recover, in the event of this suit, a sum *as, or more, favourable* than the report of the arbitrators, then the recognisors will pay all costs, &c. *or deliver the plaintiff to the jail of this county.*" This recognisance is clearly defective in two particulars: 1st. In describing the sum to be recovered on the appeal, which, instead of *greater*, is only *as great.* 2d. In

(a) 4 *Mass. Rep.* 349.

allowing the alternative of surrendering the plaintiff to jail, in case of non-payment of the costs, &c. If the defendant had excepted to the recognisance in proper time, the appeal ought to have been dismissed. But, having acquiesced for more than twelve months, in consequence of which the plaintiff must have been put to expense, in preparing for his trial, the objection came too late. The recognisance being for the benefit of the defendant, he might wave it altogether, or accept of one which was defective. I am of opinion that the facts in this case, amount to a waver of any exception to the recognisance, and therefore the Court of Common Pleas was right in refusing to dismiss the appeal.

2. The second exception is, to the admission in evidence, of a deed from the plaintiff to the defendant, dated 27th *October*, 1783, conveying sundry lands, and some personal property to the defendant. In order to understand this exception, we must advert to the declaration. It sets forth a covenant between the plaintiff and defendant, by deed dated 27th *October*, 1783. By this deed, the defendant, in consideration of the sum of 100*l.* paid to him by the plaintiff, conveyed to the plaintiff a certain tract of land, (describing its situation) containing 300 acres, more or less, which said land the defendant had purchased of a certain *John M'Adoe*, as might appear by a bill of sale of the said *M'Adoe*, dated 11th *September*, 1783, and to which said land the said *M'Adoe* had title by virtue of a warrant for fifty acres, from the land office of the proprietors of *Pennsylvania*, dated 1st *August*, 1776. And the said defendant, by his said deed, *did covenant with the plaintiff, that he the said defendant, for himself his heirs and every of them, the aforesaid land and premises, viz.* 300 *acres more or less, described as aforesaid, to the said plaintiff and his heirs would warrant and defend from all persons laying lawful claim to the same, (the late proprietors of the state of Pennsylvania only excepted.)* The declaration then proceeds to aver, that the plaintiff had paid to the defendant the said sum of 100*l.*, which, by the writing aforesaid, he had agreed to pay, " when, in truth, and in fact, the defendant, at the time of the sale aforesaid, and date of the aforesaid deed, or at any time since, had no title to any tract of land situate in *Puckety*'s creek, &c.," (describing it as it was described in the said deed,) " nor hath he procured the title to the aforesaid lands, nor hath he fulfilled and perform-

ed the several covenants and agreements, on his part, to be done and performed, as set forth in the said deed, but the same hath broken, &c." Thus, it appears, from the plaintiff's declarations, that he paid the defendant 100*l.* for the land which the defendant sold and warranted to him, but the object of offering in evidence the deed from the plaintiff to the defendant was, to establish a fact in direct contradiction to the declaration, *viz.* that the plaintiff had given to the defendant, for the land warranted by him, not 100*l.*, but *other land and property of much greater value than* 100*l.* The consequence of such evidence was, that the jury had presented to them a false standard for the estimation of damages, and we see the result. Damages to the amount of 2000 dollars were given, on the warranty of a tract of land, for which the plaintiff declared he had paid but 100*l.* I am, therefore, of opinion, that this deed ought not to have been admitted as evidence.

3. The third exception is, to the charge of the Court. The defendant's counsel requested the Court to direct the jury, that it was the duty of the plaintiff to take the necessary steps in the land office, for completing the title of the land which he had purchased of the defendant, but the Court was of opinion, that in case the jury should think the title was so defective that it could not be secured by any measures that could be taken, there was no obligation on the plaintiff to make the attempt. Considering the declaration and pleadings, it appears to me that the Court was right. For the issue was joined on the *title of the defendant.* If the declaration had been such as would have brought the merits of the dispute fairly into question, it might, perhaps, have been necessary for the plaintiff to prove something done by himself, for the completion of a title which was known by both parties to be imperfect: but, as they have thought proper to join issue on the goodness of the defendant's title, it was sufficient for the plaintiff to prove that title to be bad.

4. The last exception is to the declaration. The plaintiff avers, that the defendant sold him a tract of land, with warranty, against all but the late proprietors of *Pennsylvania.* This warranty is not broken, without an eviction; but no eviction is alleged. The breach of covenant assigned, is, that the defendant had no title. But this is no breach of the defendant's covenant; because he never said, that he had

title: on the contrary, by warranty against all but the pro-   
prietors, he declared that the legal title was in the proprie-   
tors. This appeared, too, by other circumstances in the
agreement. The title to 300 acres of land, rested on a war-
rant for only 50 acres, on which no patent had been ob-
tained, nor even a survey made. Both parties know, that
there was no more than a right to the pre-emption of the land,
which if properly followed up, might be completed, provided
there were 300 acres vacant, at the place described in the
warrant. The declaration, then, was radically defective in
setting forth that as a breach of covenant, which was, in
truth, no breach at all. Upon the whole of this case, my
opinion is, that the judgment should be reversed.

GIBSON J. 1. There is no question that the recognisance
of bail on the appeal was not taken pursuant to the act of as-
sembly. It ought to have been a direct undertaking to pay,
subject to no condition, except that of obtaining a verdict
more favourable than the award; instead of which, the bail
would have been discharged if their principal had recovered
nothing, or they had surrendered him in discharge of their
recognisance. But bail being for the benefit of the adverse
party, he may, if he please, wave it altogether. In appeals
from justices of the peace, the practice is not to quash unless
the motion is made as soon as an opportunity occurs, which
generally is the term to which the appeal is returnable. In
this case, the motion to quash was not made until a year after
the appeal was entered. It is not sufficient that the appellee,
himself, has taken no step in the cause, before his motion;
for if he suffer his antagonist to proceed, it will amount to a
waver of all defects in the manner of taking the appeal: and
there appears good reason for it; because the issue may have
been made up, the cause put down by the appellant, and the
expense of preparation for trial incurred for several terms, be-
fore he is apprised of the determination of the appellee to
have him put out of Court. I therefore think, that a party
taking exception to an appeal must, unless under very special
circumstances, do so at the next term after it is entered.

2. The deed from *M'Anulty* to *Clarke* was, in no wise,
pertinent to the issue. The point in controversy on the
pleadings, was whether *Clarke*, at the time of the sale, to
*M'Anulty*, had title to the land or not. How could that deed

1817.

CLARKE
v.
M'ANULTY.

prove the plaintiff's part of the issue? It recited the sale to *M'Anulty*, as its consideration; and if it could have had any effect it would have been that of proving the consideration of the deed containing the warranty, to be different from what the plaintiff himself averred it to be; and this the plaintiff could not be permitted to prove.

3. It is impossible to support the declaration. The covenant of warranty protects only against an ouster from the possession; and there can, therefore, be no breach of it assigned without alleging an actual eviction. It is true, that evidence of a paramount title in a stranger, and that the warrantee, in consequence, yielded up the possession, will support such an allegation; for the law does not require the idle and expensive ceremony of being turned out by legal process, when that result would be inevitable. Still, however, an actual ouster must be set out. It is unnecessary to cite cases to this point; the difference between a covenant of warranty and of seisin being recognised as existing in *England* and our sister states: but it is said, that as the statute of 36 *H.* 8. *c.* 9, is not in force here, and as it is usual to sell land where the vendor is not in possession, a larger operation should be given to the covenant of warranty here than elsewhere, because the vendee, where he did not obtain actual possession, would otherwise be without remedy. This is a good reason why a purchaser should secure himself by a covenant of seisin, or that the vendor has a lawful right to convey: but it is no reason why the law should interfere to cure the effects of negligence at the expense of confounding settled distinctions. The assignment of the breach is a general allegation that *Clarke* had no title; and the very warranty declared on excepted title of the proprietary; so that the breach being larger than the covenant, the assignment is bad even on that ground. An ouster by a person deriving title from the commonwealth, posterior to the warranty, would not be a breach of it.

4. An exception is taken to the direction of the Court, that if the title conveyed by *Clarke* was defective, *M'Anulty* was not bound to take any step to perfect it. What is the state of the pleadings? The breach assigned is, that the defendant had no title to the land; and on this he takes issue. Did the plaintiff, then, not put his cause on the very point upon which the Court left it to the jury? It is too

clear for a doubt, that the charge was right.  But the judg-    1817.
ment must be reversed.                                          ――――――
                                                                CLARKE
                                                                  *v.*
DUNCAN J. gave no opinion, having been counsel in the          M'ANULTY.
cause.

Judgment reversed.