# CASES

IN

# THE SUPREME COURT

OF

# *PENNSYLVANIA.*

## PATTON *against* McFARLANE.

An action of covenant, upon a general warranty in a deed of conveyance, cannot be maintained by the grantee against the grantor, to recover the amount of purchase money due to the Commonwealth, which was voluntarily paid by the grantee, while in possession of the land conveyed.

In an action upon a covenant of general warranty contained in a deed of conveyance, in order to enable the grantee to recover, he must allege in his declaration an eviction from the land conveyed.

Although an eviction must be alleged in the declaration, such allegation may be supported by the proof of circumstances which do not amount to an absolute eviction. Proof of a better title than that of the grantor, and that the grantee gave up the possession to the owner of such title, will support the allegation of eviction.

WRIT of error to the Special Court of *Centre* county.

This was an action of covenant, by *James McFarlane* against *Samuel Patton,* upon a general warranty, contained in a deed of conveyance of a tract of land by *Patton* to *McFarlane,* and the breach of the covenant laid in the plaintiff's declaration was, that the purchase money due to the Commonwealth had not been paid, and was an incumbrance upon the land, which *McFarlane* was obliged to pay, and did pay, to the amount of two hundred and thirty-three dollars and thirty cents, in order to obtain a patent.

The defence was, that inasmuch as the plaintiff had not averred in his declaration, nor proved on the trial, an eviction from the land conveyed, he could not maintain this action of covenant upon the general warranty contained in the deed. The court below was

of opinion, that the plaintiff was entitled to recover the amount of the money paid to the Commonwealth with its interest, and so instructed the jury, who found a verdict accordingly. The question was argued in this court, at June term, 1831, by *Potter* for plaintiff in error, and *Blanchard* and *Hale* for defendant in error, and held under advisement until this term, when, by direction of the court, it was re-argued by

*Potter* for plaintiff in error.

In order to establish the position, that an eviction was essential to the maintenance of an action upon a covenant of warranty, cited *Co. Litt.* 365. *a.* 2 *Black. Com.* 300, as to the nature of the warranty: and as to the origin of an express warranty, 2 *Cain's Rep.* 194. 2 *Institutes,* 275. 2 *Black. Com.* 301. That the remedies to be pursued by the tenant in case of a breach of warranty, in former times, were first by voucher; and in explanation of this remedy, was cited *Co. Litt.* 101–6. Second, by writ of *warrantia chartae;* and that an eviction was essential to the complainants right to recover by either of these remedies. *Fitz. N. B.* 310, 315. 3 *Black. Com.* 184. 11 *Serg. & Rawle,* 115. By these authorities it manifestly appears, that nothing but an eviction, is a breach of the covenant of general warranty. And the same doctrine is recognized by all respectable *American* authority, and it is expressly said, that a lawful eviction must be averred and proved, *Kent* v. *Welch,* 7 *Johns. Rep.* 259. *Vanderkan* v. *Vanderkan,* 11 *Johns. Rep.* 122. *Kellogg* v. *Wilcoks,* 2 *Johns. Rep.* 4. *Clarke* v. *McAnulty,* 3 *Serg. & Rawle,* 370.

In this case, then, the incumbrance in favor of the Commonwealth, which the plaintiff volunteered to pay, is the alleged breach of a covenant real, which runs with the land, and which in law is a covenant of title. In order to come to the conclusion, that the plaintiff can recover in this action, we must forget the nature of the covenant upon which it is founded. "If the facts are true," says the court below, "the covenant was broken." As well might they have said, that the plaintiff should recover, without any covenant in the deed at all. If the grantee of land can maintain covenant on the warranty, because of the payment of an incumbrance by him, it will be necessary to decide, that he may maintain an other action on the same warranty, and as often as incumbrances may be paid by him, and at last he may be evicted; and then an other action on the same warranty will be essential to the administration of justice: this cannot be. *Co. Litt.* 393.

*Blanchard* for defendant in error.

When *Patton* conveyed to *McFarlane* and covenanted to war-

(Patton *v.* McFarlane )

rant and defend the title, he had it not; the legal title was in the Commonwealth; whose officers, by the act of 22d March, 1820. 7. *Smith,* 281, were directed to proceed and recover the purchase money. This proceeding could not have been against *Patton,* but necessarily must have been *in rem,* whereby the land in possession of *McFarlane* would be the object of recovery, and no defence which he could have made, nor any act of his, short of the payment of the money, would have shielded the land from sale. Does the law then require, that *McFarlane* should fold his arms, and see his land, of great value, sold, in order to enable him to maintain an action against the warrantor. It is not necessary that the grantee should be evicted by action, in order to enable him to sue on his warranty: if there is really a better title than that conveyed to him, he may give up the possession to the holder of such better title, and maintain covenant on the warranty. What reason is there, then, why he should resist a just claim due to the Commonwealth, secured by the possession of the legal title? Why do so vain a thing, the only consequences of which must be, additional expense, vexation and perhaps loss to all parties interested? Cited *Helfenstein* v. *Wagoner,* 13 *Serg. & Rawle,* 208. *Funk* v. *Voneida,* 11 *Serg. & Rawle,* 112. *McKennon* v. *Doughman,* 1 *Penn. Rep.* 417. *Hamilton* v. *Cutts,* 4 *Mass.* 349. *Sprague* v. *Baker,* 17 *Mass.* 586. 3 *Saund.* 181. *b. note* 10. *Foster* v. *Pearson,* 4 *Dun & East* 617.

The opinion of the court was delivered by

KENNEDY J.—*Samuel Patton,* the plaintiff in error, by his deed bearing date the 24th of July, 1821, conveyed in fee simple to *James M'Farlane,* the defendant in error, 200 acres and eighty five perches of land, with a covenant of general warranty. *Patton* held the land under a location and survey in the name of *William Cochrane,* but had never paid to the Commonwealth the purchase money due to her, which was a charge upon the land, and obtained a patent for it.

Upon the 10th of September, 1821, *M'Farlane* paid to the Commonwealth two hundred and twenty-eight dollars in full of the purchase money, as also the further sum of fourteen dollars and fifty-cents for the patenting fees; and a patent was thereupon granted to him for the land.

This suit is an action of covenant, and was brought by the defendant in error against the plaintiff in error, to recover the money which he had paid in order to have his title to the land perfected, and to obtain a patent for it from the Commonwealth.

The declaration, after reciting the deed of conveyance from *Patton* to *M'Farlane,* and the covenant of warranty, set forth the facts

(Patton *v.* M'Farlane.)

of the legal title to the land being in the Commonwealth at the time of making the conveyance, and her claim to the money which was paid by *M'Farlane,* without which, a legal and good title could not have been obtained, and then assigned the neglect and refusal of *Patton* to pay this money to the commonwealth, and to procure a patent for the land, as a breach of his covenant of warranty.

Several errors have been assigned in this case, but the only question to be solved is this: Is it necessary in order to maintain an action of covenant for a breach of warranty of title, to allege an eviction, in the declaration, and to prove it, or what may be considered equivalent to it, on the trial of the cause?

In ancient times, it was usual to annex a warranty to the conveyance of lands, by which the grantor for himself and his heirs undertook to warrant and defend the same to the grantee. By the feudal constitution, if the vassal's title to enjoy the feud was disputed, he might vouch or call the lord or donor to warrant and insure his gift; which if he failed to do, and the vassal was *evicted,* the lord was bound to give him a feud of equal value in recompence, 2 *Black. Com.* 300; since that, however, a different mode of obtaining this object has been resorted to and adopted, by inserting in deeds of conveyance and of grant, what are usually called covenants for title. This invention has been ascribed to Sir *Orlando Bridgeman,* 3 *Pow. Conv.* 205 *Platt on Cov.* 304. This last author says "the simple means they presented of carrying into effect the various intentions of parties, and the facility with which they were accommodated to the circumstances connected with titles, soon occasioned their general use in practice."

Of these covenants for title, there are five in number: 1. That the vendor is seized in fee. 2. That he has a good right to convey. 3. That the purchaser and his assigns shall quietly enjoy. 4. For indemnity against incumbrances; and 5th, for further assurance.

If a recovery in this case, upon the covenant of general warranty, can be supported without either allegation or proof of an eviction, it would, in effect, be deciding, that the covenant of general warranty, contains within it, each of these five covenants, which would be a novel idea to conveyancers and professional men. Because I cannot conceive of any defect or objection that can be discovered which may affect either the possession, or the sufficiency of the title, to invest the vendee completely with the estate professed to be conveyed, that may not, with as much propriety as the present case, be embraced in, and considered as provided against by the covenant of general warranty, and an action supported for a breach of it, without either averring or proving an eviction. It comes to this, that the covenant of general warranty may either be considered as a covenant of seizin, of good right to convey, of

(Patton *v.* M'Farlane.)

quiet enjoyment, of indemnity against incumbrance, or further assurance, as may best suit the wishes of the vendee. But it has been decided by the Supreme Court of the state of *New York*, when composed of judges alike distinguished for their talents and legal intelligence, that a general warranty contained no covenant of seizin either express or implied. *Vanderkarr* v. *Vanderkarr*, 11 *John. Rep.* 122. It was the inaptitude of the covenant of general warranty to accommodate itself to the various intentions of the parties, as well as the circumstances connected with the titles to the land, that first gave rise to these special covenants, and recommended them to general use; which repudiates the idea of their being contained within it. And Judge *Blackstone*, in speaking of them, seems to consider them preferable to a warranty, because they are susceptible of such modification, as to make them either a better or a less security to the grantee, as may best comport with the intention of the parties, 2. *Bl. Com.* 304.

The propriety of introducing a general warranty, or one or more of these special covenants, and which of them, must always depend upon the agreement of the parties, and the particular circumstances under which the conveyances are to be made. The man who considers himself the absolute owner of the estate in fee simple which he is about to sell and convey, and considers himself also as receiving a price for it, that will indemnify him for doing so, may annex all those five covenants to his deed of conveyance. All, however, cannot be necessary in any case. If the covenant of seizin be inserted, it implies a power and good right to convey, and therefore this last need not be annexed. But a man may have a power and authority to sell and convey an estate in fee, without being seized himself, and in such case, it would be proper enough for him in his deed of conveyance, to covenant for his having full power and good right to convey; although it would be inappropriate as well as indiscreet in him to covenant, likewise, that he was seized: because, if he did, it would be a covenant broken as soon as made, upon which he might be sued, although the vendee was invested by the deed of conveyance which was made to him, with a perfectly good title in fee simple.

That an eviction must not only be alleged, but proved, in order to maintain an action upon a covenant of warranty, I have ever considered a proposition well settled in law. The books of precedents or of pleading furnish no form for a declaration in such an action, without averring an eviction under an elder and a better title. Adjudged cases on this subject, as well as the forms of the declaration in them, all tend to prove, that such an allegation must be set forth in the declaration, and full proof made of its truth on the trial. *Watton* v. *Hele.* 2 *Saund.* 177, decided in the

(Patton *v.* M'Farlane.)

time of 22 *Car.* 2, which is considered a leading case on this sub-
ject; and subsequent cases noted by *Serjeant Williams* in his note
to it, evidence this pretty fully.

The principle, I believe, has been recognised or established by
the highest tribunal of almost every state in the union.    The only
exceptions that I have met with, are two cases decided in *South
Carolina* and reported in 2 *Nott & M'C.* 186, *Mackey* v. *Collins,
& Furman* v. *Elmore, Ibid* 139 *in note.*

But in *Kentucky* it has been decided, that the plaintiff to re-
cover upon a warranty, must shew an eviction by a paramount title,
not derived from the bargainee.    *Booker* v. *Bell,* 3 *Bibb.* 174,
and must so aver it in his narr.    *Stephens* v. *Pattie, Ibid.* 117.
So in *Tennessee* it was held, that the declaration must allege an e-
viction.    5 *Hayw.* 100 *Crutcher* v. *Stump.* And to the same ef-
fect by the Supreme Court of the state of *New York,* in the cases
of *Kent* v. *Welsh,* 7 *John. Rep.* 258, and *Sedgewick* v. *Hallen-
back, Ibid.* 376: and again by the Supreme Court of the *United
States* in *Day et als.* v. *Chism.* 10 *Wheat.* 449.    And even in
*Massachusetts,* in the case of *Hamilton* v. *Gretts,* 4 *Mass. Rep.*
349.    Where it was held, that the eviction need not be by judg-
ment of law, but that the warrantee might give up the land with-
out suit: the eviction being alleged in due form in the declaration.
And in *Marston* v. *Hobbes,* 2 *Mass. Rep.* 433, it was decided,
that it was not sufficient to assign the breach in the declaration, by
negativing the words of the covenant, but that it must be done
specially, by shewing an *ouster* by an elder title.    And again in
*Emerson* v. *The Proprietaries of a Tract of Land in Meriot*
2 *Mass.* 464, an eviction by an elder and better title must be
proved.    Also to the same effect, in *Pearce* v. *Jackson,* 4 *Mass.
Rep.* 408.    And to the same effect see *Rich* v. *Waite,* Chip. 68,
and *Williams* v. *Wetherbee,* 1 *Aik.* 233, in *Vermont.* Such like-
wise appears to be the settled law of *Virginia,* see *Castleman* v.
*Vetch,* 3 *Rand* 598; and in the *State of New Jersey,* see *Stewart*
v. *Drake* 4 *Halst.* 139.    In addition to the cases already cited
from *New York,* I will refer to 2 *John.* 4, where it is said to be
a well settled rule, that under the covenant of warranty, the plain-
tiff must shew a lawful eviction, in order to maintain his action:
and in *Woldron* v. *M'Carty,* 3 *John.* 471, where M. gave a deed
of land to W. in which he covenanted that he would warrant and
defend W. in the quiet and peaceable possession of the premises.
At the time of the conveyance, there was a previous mortgage and
a sale of the premises decreed, and W. afterwards purchased the
same at the master's sale, and then brought his action for a breach
of the covenant of warranty for peaceable enjoyment; and it was
held that an action could not be maintained on the covenant, until
there had been an eviction or actual ouster by a paramount lawful

(Patton *v.* M'Farlane.)

title. This last case I consider a vastly stronger case to entitle a plaintiff to recover, if possible, without an eviction, than the one now before the court; because the land was actually exposed to sale, and sold to W. who must inevitably have lost it, if he had not purchased it.

Although the Commonwealth had a claim against the land in the case under consideration, yet she had taken no step whatever, after the conveyance of it to *M'Farlane*, to enforce the payment of the money. When she would have done so, was uncertain; and *Patton* had a right, under his covenant of warranty with *M'Farlane*, to avail himself of all the indulgence that might be given by delay on the part of the Commonwealth, to proceed against the land, to have the money collected by a sale of it. Although it may be considered certain that the payment of the money would have been compelled some day or other, yet it might make some difference to *Patton* whether he was to be called upon immediately, at the will of *M'Farlane*, for payment, or to have it postponed to a distant day, by forbearance on the part of the Commonwealth to proceed to collect it.

In the last place, as a binding authority upon the subject, we have the decision of this court in the case of *Clark and M'Anulty, 3 Serg. & Rawle*, 364, where it was held, that without an eviction by an elder and better title, which must be averred in the declaration, and proof made of it on the trial of the cause, a covenant of warranty was not broken, and that there could be no recovery by the plaintiff.

The court below were wrong in charging the jury, then, in this case, that the plaintiff below was entitled to recover, under the particular circumstances given in evidence without proof of an eviction: and that it was sufficient to state the particular circumstances in the declaration, which might entitle the plaintiff to recover without alleging an eviction.

I consider that an eviction must be alleged in all cases, although it may be supported by the proof of particular circumstances: but it will not do to state the circumstances themselves; the averment must be according to their legal effect. For instance, an eviction might be alleged in the declaration, but, on trial, may be shewn by proof of an elder and better title than that which was transferred by the vendor, and that the vendee voluntarily, upon the demand of him who had such better title, gave up the possession of the land to him. So in the case of a suit by the holder of a negotiable note against the endorser, it is indispensably necessary, as I conceive, to aver a demand upon the drawer, and notice given of the non-payment to the endorser, and this may be prov-

54

(Patton *v.* M'Farlane.)

ed by shewing that the endorser, before the note became payable, accepted from the drawer an assignment of his estate, for the purpose, *inter alia,* of indemnifying him against his endorsement; which in fact is neither a demand, nor yet notice of non-payment; but in law has the same effect; as it renders the demand and notice unnecessary. *Barton* v. *Baker,* 1 *Serg. & Rawle,* 334. *Smith* v. *The Bank of Washington,* 5 *Serg. & Rawle,* 321.

Judgment reversed.