McLennan vs. Prentice.

McLennan, Respondent, vs. Prentice, Appellant.

*March 24 — June 21, 1893.*

*Vendor and purchaser of land: Breach of covenants of seisin, etc.: Title afterwards acquired by grantor: Damages: Eviction: Rescission: Joinder of causes of action: Res adjudicata: Ownership of lands under shoal waters of Great Lakes.*

1. If, before the commencement of an action for a breach of the covenant of seisin in a conveyance of land, the grantor acquired title and, by virtue of a covenant of warranty, the grantee thereby acquired the seisin covenanted for, only nominal damages can be recovered for the breach.

2. Where the grantee has obtained possession of the premises, substantial damages for a breach of the covenant of seisin cannot be recovered until there has been an eviction by title paramount, either actual or constructive; and there is no constructive eviction unless the paramount title has been hostilely asserted.

3. Where the premises were vacant and there was nothing to prevent the plaintiff from taking actual possession except the fact that a railroad company had extended the embankment of its track upon a part of one of the lots and that the place was used for rolling saw-logs from the cars into the waters of the bay, such use not appearing to be adverse or hostile to the title conveyed, and the railroad company not having attempted to acquire any title to said lot, the fact of such intrusion on the land did not constitute an eviction.

4. Several lots having been conveyed by warranty deed by one whose title was defective, there was a rescission by consent as to a part of the lots and an agreement that the grantor should make the title good as to the others. He did so as to some of them before the commencement of an action by the grantee for breach of the covenant of seisin. *Held,* that the title so far as acquired inured to the benefit of the grantee and was *pro tanto* a defense to the action.

5. The grantee, in such case, after the partial rescission and agreement as to making the title good, could not have a further rescission on the ground of the original fraudulent representation as to title.

6. A claim to rescind a sale of land on the ground of fraud cannot be joined with a cause of action on the covenants of seisin and good right to convey, since the latter is in affirmance of the contract and the former in disaffirmance.

McLennan vs. Prentice.

7. An executed conveyance cannot be rescinded, in the absence of fraud, merely because of a breach of the covenant of seisin contained therein.

8. Findings of fact which were not excepted to by the respondent are as to him absolute verities, and cannot be reviewed in his behalf.

9. An adjudication upon a former appeal, when the breach of the covenants in a deed appeared to be total, that the grantee was entitled to recover the entire purchase money and interest, is not conclusive upon a second appeal, where, after a new trial upon all the issues, it appears that the breach was only partial.

10. Lands lying under the shoal waters of the Great Lakes, and between the bank and navigable water, are held by the state in trust for the public purposes of navigation and fishing, and no grant thereof for purely private purposes can operate to impair or defeat the previously acquired rights of the riparian owner.

11. Where such lands have not been granted to any one by the state, they are not the subject of private ownership, so that they can be conveyed in fee or otherwise.

12. Where a warranty deed purported to convey an entire block, all of which, except a part of one lot, was under the waters of a bay of Lake Superior and not the subject of private ownership, there was, as to the portion so under water, a breach of the covenants of seisin and good right to convey, but not so as to the part of a lot on the bank, with its appurtenant riparian rights; and the measure of damages for the partial breach would be such fractional part of the whole consideration paid as the value, at the time of the purchase, of the part to which the title failed, bears to the whole block purchased, and interest thereon during the time the grantee has been deprived of the use of the part to which the title failed, not exceeding six years.

APPEAL from the Circuit Court for *Ashland* County.

This case was before this court on an appeal by the plaintiff from a judgment rendered against him on the merits (77 Wis. 124), which was reversed with directions to the circuit court, in its discretion, to grant a new trial upon cause shown of all the issues instead of rendering judgment for the plaintiff for the amount of his claim to which he was entitled upon the facts as they then appeared. Subsequently the circuit court granted a new trial pursuant to the right so reserved to it. The case is stated in 77 Wis. 124.

It appeared upon the new trial that neither of the parties to the conveyance, upon the covenants of which the action is founded, had ever been in the actual possession of the premises described therein. This court had held that the action was one on the covenant of seisin, and that the burden of proof was on the defendant, the grantor, to show that he was seised of an estate in fee at the time of the execution of the deed, and in the absence of such proof the grantee therein was entitled to recover the purchase price and interest from the date of the deed. The conveyance included all of lots 1, 2, 3, 4, 5, and 6 in block 23, constituting the entire block (sold for $6,000), and lots 20 and 21 in block 37 (sold for $2,500), in Ellis' addition to Ashland, for the entire consideration of $8,500, and was dated April 2, 1887. In July of that year the plaintiff became satisfied that there were no lots in block 37, and became very much afraid that block 23 was not as the defendant represented it to be, and desired him to settle the matter up in respect to lots 20 and 21 in block 37. He had then found out that lots 2 and 3 in block 23 belonged to the railroad company, and about the title to the lots in block 23, except as to 1 and 6. At this time the plaintiff quitclaimed to the defendant lots 20 and 21 in block 37 for $2,500; and the purchase-money mortgage given at the time of the original purchase for $5,000 of the price of $8,500, was discharged, and the plaintiff gave the defendant a new mortgage for $2,500, being the balance thereof, $3,500 having been paid down at the time of the purchase. The defendant then told the plaintiff he could not fix it up in regard to block 23 at that time; that he wanted to ascertain his rights more fully; and the plaintiff says he told him he "was perfectly willing to take block 23 under these circumstances, if he would make it right with me in regard to the balance of the purchase money;" that he "would do what was right about block 23 when he could find out more about it." The

plaintiff testified that he supposed that the title to the block was perfect when he purchased it, except as regards the title to two of the lots in the Wisconsin Central Railroad Company, which the defendant promised to obtain from the railroad company — lots 2 and 3 — for him. The defendant had no title to lots 2 and 3 in block 23, at any time, except as riparian owner of lot 1; and on the 11th of May, 1888, the plaintiff tendered a quitclaim deed to the defendant of the entire block, and brought this action to recover the contract price.

All of the lots in block 23 lie side by side under the shallow water between the shore of Ashland bay and navigable water, except lot 1, a considerable part of which was high land on the bank. The complaint charged that fraudulent representations were made by the defendant at the time of the purchase — first, in respect to the quantity of hard land in lot 1; and, second, that the defendant had a good title to the entire block. But in view of the former decision, and the finding and facts already stated, this branch of the case, it is understood, is eliminated from the present controversy.

The court found, as matter of fact, that lots 4 and 5 in block 23 were both owned by the defendant, and that lots 1 and 6 had been formerly owned by him, and in substance that the title thereto was then held in trust for him; that after the conveyance by the defendant to the plaintiff, which was by warranty deed, he procured them to be conveyed to one Maddocks, and by said Maddocks to the defendant, who now owns the same; that as to lots 2 and 3 the defendant has not, and never had, title thereto. The evidence shows that the deed from Maddocks to the defendant for lots 1 and 6 was made December 13, 1887; that the plaintiff claimed that there was a total want of title to lots 1, 2, 3, and 6. It was also found that in 1883 the Wisconsin Central Railroad Company commenced building a track

of its road in the street south of lot 1, and completed it the next year, erecting an embankment which extended on lot 1, and covered substantially all of the hard land thereon,— the embankment running to the water's edge, and on a portion of the lot extending into the water; that the embankment is permanent, and the railroad company thus appropriated all of the hard land on block 23, and continued to use it for the purposes of their track and embankment supporting it, but had never acquired title to the land nor instituted proceedings to condemn it; that the plaintiff purchased block 23 because it was deemed valuable for the riparian rights appurtenant thereto, and as a suitable place to carry on business connected with the navigation of the lake, and that the block is of little value for any other use or purpose; that in order to carry on such business it would be necessary to have free access to and from the shore, and from the northerly limits of such block, out to the navigable waters of the lake, and ownership of lots 2 and 3 in other parties would render it of no value for such purposes.

The court found as a conclusion of law that the plaintiff was entitled to judgment for the sum of $6,000 and interest from the date of such sale, April 2, 1887. From the judgment entered accordingly the defendant appeals.

For the appellant there was a brief by *Tomkins & Merrill*, and oral argument by *W. M. Tomkins*.

*Thomas L. Kennan*, for the respondent.

PINNEY, J. 1. It was found that when the defendant executed the conveyance to the plaintiff in question he owned water lots 4 and 5 in block 23; and it was proved that he afterwards, on December 13, 1887, acquired title to lot 1, part of which was on the bank and hard land, and the rest under shoal water of the bay, and also apparent title to lot 6, lying out beyond lots 4 and 5 and extending to or towards

navigable water. This was many months before the plaintiff attempted to rescind the sale. The evidence shows that he was satisfied with block 23 at the time the arrangement of July, 1887, was made, whereby the mortgage on block 23 to the defendant was canceled, and another mortgage executed thereon for $2,500, after applying the proceeds of lots 20 and 21, above mentioned. He then had full knowledge, or the means of knowledge, as to the true state of the title to each lot in the block, and he knew that he had obtained no title to lots 2 and 3, but supposed he had good title to lots 4 and 5; and it was understood that he was to obtain good title to lots 1 and 6, and also to lots 2 and 3. He was then content to await the efforts of the defendant to complete the title. When the plaintiff tendered to the defendant, on the 11th day of May, 1888, a reconveyance of block 23, and commenced this action, he had acquired record title to all the block, except lots 2 and 3. The covenant of seisin in the deed from the defendant to the plaintiff was partially or wholly broken, if at all, when made; and if the deed did not pass any title to the plaintiff, or to the extent that it failed to pass title to the premises described in it, and if the grantee did not obtain possession, the covenant of seisin would thereby be turned, wholly or partially as the case might be, into a right of action, and he might at once sue on the covenant of seisin and recover the entire purchase-money with interest, or a proper portion thereof if the failure to convey title was only partial. If the grantee had entered or been put in possession of the premises included in the deed, the breach of this covenant would be technical and would entitle the grantee, in case he sued on it, to nominal damages merely; but he could not in such case recover substantial damages until he had been evicted or in some way deprived of the whole or a part of the premises, or suffered substantial loss. Proof of eviction is not necessary to entitle the grantee to recover on this

McLennan vs. Prentice.

covenant, and has no bearing in an action on it, except on the question of damages. But where the deed contains a covenant of warranty, by which the grantee has obtained seisin of a title subsequently acquired by his grantor, it would be inequitable that he should have the seisin and be allowed to recover back the consideration paid for it. Accordingly, when the defendant acquired the title to lots 1 and 6, December 13, 1887, his seisin at once inured and passed to the plaintiff, in virtue of the covenant of warranty in his deed. *Baxter v. Bradbury,* 20 Me. 260; *Somes v. Skinner,* 3 Pick. 52; *Knowles v. Kennedy,* 82 Pa. St. 445; *Knight v. Thayer,* 125 Mass. 25; *King v. Gilson,* 32 Ill. 348. If the plaintiff acquired, before the commencement of the action, by virtue of his deed, the seisin which it was the object of both the covenants of seisin and of warranty to secure to him, he would be entitled only to nominal damages. In *King v. Gilson, supra,* it was held sufficient to restrict the grantee to nominal damages if he acquired by inurement the legal title at any time before the assessment of damages in the action on the covenant of seisin. *Baxter v. Bradbury,* 20 Me. 264.

2. When the plaintiff commenced his action he had not been evicted by paramount title, either actually or constructively, from any part of the premises. The lots were vacant, and there was no obstacle to prevent the plaintiff from taking actual possession of them, except in respect to the alleged occupancy by the railroad company of part of lot 1 by putting an embankment on it. The evidence shows that no part of this lot is within the limits of its track, which is within the adjoining street, and that it is its track that has been so long used and occupied by the railroad company, and that this part of lot 1 is generally used by others as a place to roll saw-logs off the cars into the bay. But this use does not appear to have been adverse or hostile to the title thus conveyed, and in the absence of

such proof it is presumptively permissive and in subordination to it. The railroad company had no title to this lot, nor had it attempted to acquire any. Neither unlawful intrusion on lands, nor the taking thereof by the right of eminent domain, will constitute a breach of any of the ordinary covenants in the deed. Rawle, Cov. 129, 153; *Kutz v. McCune*, 22 Wis. 628; *Smith v. Hughes*, 50 Wis. 621; *Bailey v. Miltenberger*, 31 Pa. St. 37. A further question remains concerning title in respect to lots 2 and 3; and as to them the plaintiff acquired, by reason of his deed of lot 1 and the general covenant of warranty contained in it, the title and control thereof incident to his riparian ownership of that lot. But of this more remains to be said.

3. As already stated, the cases in which nominal damages only may be recovered in actions on the covenant of seisin, or less than the entire purchase money and interest, are those where the grantee has obtained and still holds possession, or where some other benefit or advantage, such as a title to a part only, has passed by the deed; but where no semblance of title or benefit whatever has passed, where the grantee has derived no advantage whatever from it, and can derive none without a wrongful entry upon the estate of another, he is entitled to recover at once substantial damages and to the full amount of the consideration and interest. Substantial damages, or damages to be measured by the consideration paid and interest, cannot in the former case, we think, be allowed until there has been an eviction by title paramount, either actual or constructive. This is, we think, in accordance with well-settled principles. But the subject has been somewhat complicated in consequence of the effect given in later cases to a remark in *Mecklem v. Blake*, 22 Wis. 495, not material to the case, to the effect that where there has been a breach of the covenant of seisin, if the plaintiff "desired to rescind for want of title and to recover back the purchase money paid

and interest, he should have tendered the defendant a re-conveyance and the possession, and then he could have maintained his action;" citing *Taft v. Kessel*, 16 Wis. 273, in which the distinction between rescinding executory contracts for the conveyance of land, and deeds executed in performance thereof, seems to have been overlooked, and the law in respect to the former class of cases was applied to a case where the contract had been executed by the delivery of a deed of conveyance. In the former class a want of title is ground for rescission, but where the contract has been executed by the delivery of a deed of conveyance no rescission can be had on the ground of want of title, without showing fraud. And this *dictum* in *Mecklem v. Blake* has been the foundation for subsequent statements to the effect that rescission may be had after deed executed, on the ground only of want of title in the grantor. In *Booth v. Ryan*, 31 Wis. 58, speaking to this point, DIXON, C. J., says: " Executory agreements for the purchase or conveyance of land may be rescinded on the ground of want of title, and the contracts canceled; but as to executed agreements, or conveyances made and possession delivered or taken under them, the rule is different, and the power has never been exercised." This is directly the reverse of what was said in *Mecklem v. Blake*, where the plaintiff had obtained possession. In *Smith v. Hughes*, 50 Wis. 620, the remark quoted from *Mecklem v. Blake*, *supra*, was noticed and withdrawn, and it was held that rescission could not be had, in the absence of fraud, after deed executed. In *Clementson v. Streeter*, 59 Wis. 429, the same ruling was made. Chancellor KENT says: " I apprehend that in sales of land the technical rule remits the party back to his covenants in his deed, and if there be no ingredient of fraud in the case, and the party has not had the precaution to secure himself by covenants, he has no remedy for his money, even on a failure of title." And this is the strict

McLennan vs. Prentice.

English rule, both at law and in equity. 2 Kent, Comm. 473; 2 Sugd. Vend. (8th Am. ed.), 193, and cases cited in note *g.* The terms or provisions of the contract of sale are in such case merged in the deed. *Williams v. Hathaway,* 19 Pick. 388; *Witbeck v. Waine,* 16 N. Y. 535; *Jones v. Wood,* 16 Pa. St. 25; *Gates v. Winslow,* 1 Mass. 65; *Joyce v. Ryan,* 4 Me. 101; *Holden v. Curtis,* 2 N. H. 63; *Abbott v. Allen,* 2 Johns. Ch. 523; *Kerr v. Kitchen,* 7 Pa. St. 486; *Fisk v. Duncan,* 83 Pa. St. 197.

An action for a breach of the covenant of seisin is an action on a contract for indemnity. It is not founded on any right to rescind the contract or deed, though rescission is the consequence of a recovery and satisfaction, in equity if not at law. Rawle, Cov. (5th ed.), § 185. We think it clear, both upon principle and authority, that an executed conveyance cannot be rescinded, in the absence of fraud, merely because of a breach of the covenant of seisin contained therein. In this case there was no actual eviction by paramount title, so as to warrant a recovery on the ground of the covenants of warranty and for quiet enjoyment. There was such eviction in *Blanchard v. Ellis,* 1 Gray, 195; and so in *Nichol v. Alexander,* 28 Wis. 118, ruled on the strength of it, and which was a suit on all the usual covenants, where a mortgage on the premises had been foreclosed and the premises sold. Both the grantor and grantee in the deed sued on were parties to the foreclosure suit, and a writ of assistance could have issued at once. There was an actual eviction, as the sale and conveyance vested the title in the purchaser, and, though there was no one in possession, it gave him constructive possession; but the recovery was held sustainable on the covenant against incumbrances, and it was properly held that there was an actual eviction. The question of constructive eviction was not in the case, nor was it in *Blanchard v. Ellis, supra.* In *McInnis v. Lyman,* 62 Wis.

194, the general language used in *Nichol v. Alexander*, 28 Wis. 118, was substantially repeated, where there had been no eviction, actual or constructive, within the rule of any previous case; but it was held that, "if the title was perfected in the plaintiff when the action was brought, he was entitled to a fair indemnity for all damages he had sustained by reason of any acts done upon the premises under the tax deed," which was the adverse title purchased in by the defendant, and of which the plaintiff obtained the benefit by virtue of the covenant of warranty in his deed. And *Noonan v. Ilsley*, 21 Wis. 138, and *Smith v. Hughes*, 50 Wis. 620, are cited in support of this proposition. And it was also said in *McInnis v. Lyman* that "the trial failed to determine whether the plaintiff now has the title to the land described in the tax deed, or whether he remains disseised thereof. The question is material, because the rule of damages depends upon its solution." The utmost extent the courts have gone on the subject of constructive eviction is to hold that it may be said to exist "where the paramount title has been hostilely asserted." Rawle, Cov. (5th ed.) §§ 135, 150; *Axtel v. Chase*, 83 Ind. 546; *Knepper v. Kurtz*, 58 Pa. St. 480; *Sprague v. Baker*, 17 Mass. 590; *Loomis v. Bedel*, 11 N. H. 74; *Green v. Irving*, 54 Miss. 450; *St. John v. Palmer*, 5 Hill, 599. In *Matteson v. Vaughn*, 38 Mich. 375, the court, by CAMPBELL, C. J., speaking of this question, said: "Inasmuch as Matteson [the grantee] was never in possession, actually or constructively, it is difficult to see what difference there is between his original and his present position. He is no more excluded now than he has always been. We do not comprehend how he can be said to have been evicted. The substantial remedy, in such cases as this, is on the covenants of seisin and those against incumbrances. If land is vacant it is a very easy thing to assume possession, and possession may ripen into a good title, while, if disturbed,

there is no doubt of the remedy for eviction." Rawle, in his work on Covenants, § 150, says: "However far the doctrine of constructive eviction has been carried, it is believed to be still absolutely necessary that the adverse claim should have been hostilely asserted. . . . According to the weight of authority the distinction is not whether there has or has not been a judgment in favor of the paramount claim, but whether it has been hostilely asserted." *Funk v. Creswell*, 5 Iowa, 89; *Mead v. Stackpole*, 40 Hun, 473; *Shattuck v. Lamb*, 65 N. Y. 505; *Parkinson v. Sherman*, 74 N. Y. 93. In *Patton v. McFarlane*, 3 Pen. & W. 419, it was said: "If a recovery upon the covenant of general warranty can be supported without either allegation or proof of an eviction, it would, in effect, be deciding that the covenant of general warranty contains within it each of the five covenants for title, which would be a novel idea to conveyancers and professional men."

We hold, therefore, that as the plaintiff had not been evicted by paramount title the defendant had a right, before this action was commenced, to get in the outstanding title so far as he might be able, and that it inured *pro tanto* to the benefit of the plaintiff. It appears that it was understood between the parties that the defendant was to perfect the title, and, having done so in part at least, he is entitled to the benefit of it in his defense to this action. Any other conclusion would be plainly unjust.

4. It was argued on behalf of the plaintiff that the finding of the court in respect to lots 1 and 6 was erroneous; that the title subsequently acquired by the defendant, as already stated, was derived from Ashland county as a remote grantor; and that no authority was shown from the board of supervisors for conveying these lots to *Ellis*, also a remote grantor of the defendant. This question is not open for consideration on this appeal. The finding of the

court as to the facts, not having been excepted to by the plaintiff, is as to him an absolute verity, and, for want of such exceptions, cannot be reviewed in his behalf. *Hallam v. Stiles,* 61 Wis. 270; *Cramer v. Hanaford,* 53 Wis. 85; *Evenson v. Bates,* 58 Wis. 24.

5. There can be no relief by way of rescission on the ground of fraud. This is very clear. The court found that there was no fraudulent misrepresentation made by the defendant as to the quantity of hard or dry land on lot 1; and although the charge that the defendant fraudulently represented that the title to the premises was good is sustained by the finding, still the evidence shows that the plaintiff is in no position to claim a rescission on that ground. When the new arrangement in regard to the plaintiff's purchase was made in July, 1887, by which the plaintiff released to the defendant lots 20 and 21 in block 37 for $2,500 to be credited on the purchase-money mortgage for $5,000, which was accomplished by discharging it and executing a new mortgage on block 23 for the difference,— $2,500,— the plaintiff knew that he had acquired no title to lots 2 and 3 in block 23; and it was understood, or at least the plaintiff stated, that he was satisfied with block 23, the defendant having agreed to make the title to this block all right. He had had a partial rescission by consent. He could not get another partial recission without consent. And no ground existed, when he brought his action, for a total rescission, even as to block 23. Besides, this court, by its former decision, held the action to be one on the covenants of seisin and of good right to convey. A claim to rescind on the ground of fraud could not be joined, as one claim would be in affirmance of the contract and the other in disaffirmance. The plaintiff cannot be allowed, at the same time, " to blow hot and cold." It will be seen, therefore, that the circuit court erred in holding that the title to lots 1 and 6 remained in the defendant, instead of

inuring to the benefit of the plaintiff by virtue of the cove-
nant of warranty in defendant's deed to him, and also in
holding that the railroad company had evicted the plaintiff
from lot 1, and that this lot had been legally appropriated
by the company.

6. An apparent title by conveyances of record is thus
found to have been vested in the plaintiff by his deed to
the entire block except lots 2 and 3. If it was not valid
as to the portion lying under the shoal waters of the bay be-
tween the shore and navigable water, still he obtained title
to the part of lot 1 on the bank, with the riparian rights
thereby conferred in the rest of the block, and out to navi-
gable water. The evidence tends to show that the prop-
erty and property rights which thus passed to the plaintiff
were quite valuable. There was not an entire want of
title, so as to authorize the recovery allowed, for the entire
consideration money and interest. But the plaintiff con-
tends substantially that the entire merits of the action
became *res adjudicata* by the former decision (77 Wis. 124),
and that on this ground the judgment should be affirmed.
The case before the court on the former appeal was, in
brief, an action to recover the entire consideration and in-
terest, as for a total breach of the covenants of seisin and
right to convey, as to all of the lots in block 23, and the
court said: "Under the complaint the plaintiff had the right
to recover upon a breach of the covenant of seisin and on
the covenant of a right to convey, upon proof of the execu-
tion and delivery of the deed and payment of the purchase
money and that the actual possession of the property had
never been taken by the plaintiff under his deed." That
"the burden of showing that the grantor was seised of an
estate in fee at the time of the making and delivery of the
deed was on the grantor." The opinion proceeds to say:
"What evidence there was produced on the part of the
plaintiff shows *prima facie* that the legal title to two of

the lots was not in the defendant at the time of the execution and delivery of the deed. There was no evidence given as to who held the title to lots 2, 3, 4, and 5." The breach of the covenant of seisin, etc., thus appeared to be *total;* and the plaintiff was therefore held entitled to recover the entire purchase money and interest, or what was equivalent to it. This is the entire case, and all said outside of this was not material to the case before the court, and is in no just sense binding in the case as it is now before us. The court, while it reversed the judgment of the circuit court in favor of the defendant for error in holding that the burden of proof was on the plaintiff, and directed judgment for the plaintiff, gave the circuit court the right, in its discretion and upon cause shown, to grant a new trial upon all the issues in the case.

The case now made is an entirely different one from the one then before the court, and it came in under an order opening the case " upon all the issues." It would, we think, be a manifest misapplication of the rule to hold that the former decision is *res adjudicata* upon a case never before it until the present appeal. The question now before the court is what judgment ought to be given upon the title shown by the defendant, and not what judgment it was proper to give when the burden of proof was on him to show title and he wholly failed to show any title at all. The former judgment of this court upon the case then before it was plainly correct and not in conflict with the views here expressed. Upon the whole case it is evident that the judgment of the circuit court must be reversed, and the cause remanded to make an assessment of such damages as the plaintiff is entitled to recover.

7. The conveyance from the defendant to the plaintiff is in the statutory form (S. & B. Ann. Stats. sec. 2208), and imports the usual covenants of seisin and of good right to convey the premises described in it, and was an assurance

to the plaintiff that the grantor had the very estate, in quantity and quality, which the conveyance, as thus construed, purported to convey; and if the title of the grantor which he had power to convey was less, to the whole or any part of the granted premises, then these covenants were broken. 2 Suth. Dam. § 592; *Guthrie v. Pugsley*, 12 Johns. 126; *Mott v. Palmer*, 1 N. Y. 573; *Smith v. Strong*, 14 Pick. 128, 132; *Parker v. Brown*, 15 N. H. 176, 187; *Frazer v. Peoria Co.* 74 Ill. 291; *Kincaid v. Brittain*, 5 Sneed, 119. The question whether the lands or lots lying under the shoal water of the bay, and between the bank and navigable water, are the subject of private ownership, so that they can be conveyed in fee or otherwise, is a very important one, and has recently been much discussed, as well as the rights of riparian owners over the same and out to navigable water. In the case of *Diedrich v. N. W. U. R. Co.* 42 Wis. 248, it was held that "a riparian owner upon a natural lake or pond takes only to the natural shore or ordinary low-water mark thereof, and that, distinguished from appropriation and occupation of the soil under the water, a riparian owner upon navigable water has a right (unless prohibited by local law) to construct in shoal water, in front of his land, proper wharves or piers in aid of navigation, and at his peril of obstructing it, through the water, far enough to reach actually navigable water; that such riparian rights proper rest upon *title to the bank*, and are the same whether the riparian owner owns the soil under the water or not; that the general right of appropriating and occupying the soil under the water, when it exists, is not properly a riparian right, and rests not upon title to the bank only, but more directly upon title to the soil under the water;" and subject to these, and certain rights of protection of the land against the water, "any extension of possession or intrusion into the water beyond the natural shore, whether by the riparian owner or a

stranger, without express and competent grant from the public, vests no title in the person who makes it." *Stevens Point Boom Co. v. Reilly*, 44 Wis. 304.

In the absence of express and competent grant to some other, the state is the owner of the fee of all lands under navigable waters in the Great Lakes, but in trust only, for the public uses and purposes of navigation and fishing, and they may not be granted by the United States to a private person for a purely private purpose; that, the title to such lands being in the state, "they are subject to state regulation and control, under the condition, however, of not interfering with the regulations which may be made by Congress with regard to public navigation and commerce, . . . state control and ownership therein being supreme, subject only to the paramount authority of Congress in making regulations of commerce and subjecting the lands to the necessities and uses of commerce." *Hardin v. Jordan*, 140 U. S. 381, 382. The common-law rule in regard to tide waters has been extended to our Great Lakes, which are treated as inland seas, and it is held that it depends on the law of each state to what extent this prerogative over lands under the water shall be exercised. In the case of *Barney v. Keokuk*, 94 U. S. 334, it was held that "it is for the several states themselves to determine this question, and that if they choose to resign to the riparian proprietor rights which properly belong to them in their sovereign capacity, it is not for others to raise objections." But "it has never been held that the lands under water in front of the lands of riparian owners are reserved to the United States, or that they can afterwards be granted out to other persons, to the injury of the original grantees. The attempt to make such grants is calculated to render titles uncertain and derogate from the value of natural boundaries, like streams and bodies of water." *Hardin v. Jordan*, *supra*. The construction of the grants of the United States

along navigable waters is left to the principles of the common law and rules adopted by each state where the land may lie.

These views are sustained by and in accordance with the case of *Illinois Cent. R. Co. v. Illinois,* 146 U. S. 387, in which it was held that the construction of a pier, or the extension of any land, into navigable waters, for a railroad or other purposes, by one not the owner of land on the shore, does not give the builder of such pier or extension, whether an individual or corporation, any riparian rights. 146 U. S. 445. That "riparian rights are incident to riparian ownership, and existing with it, and passing with the transfer of the land. The land must not only be contiguous to the water, but in contact with it. That proximity without contact is insufficient. The riparian right attaches to land on the border of navigable water, without any declaration to that effect from the former owner, and its designation in a conveyance by him would be surplusage." In *Yates v. Milwaukee,* 10 Wall. 497, 504, it was held that the riparian proprietor is entitled to access to the navigable part of the water, on the front of which lies his land, and for that purpose to make a landing, wharf, or pier for his own use or the use of the public, subject to such general rules and regulations as the legislature may prescribe for the protection of the rights of the public, and that such riparian rights are property and valuable, and, though it must be enjoyed in due subjection to the rights of the public, it cannot be arbitrarily or capriciously impaired. It is plain that no grant by the state, for purely private purposes, of such lands, could operate to impair or defeat the previously acquired rights of the riparian owner, for the state has no right to make such a grant. The right which the state holds in these lands is in virtue of its sovereignty, and in trust for the public purposes of navigation and fishing. The state has no proprietary interest in them, and

cannot abdicate its trust in relation to them, and, while it may make a grant of them for public purposes, it may not make an irrepealable one; and any attempted grant of the kind would be held, if not absolutely void on its face, as subject to revocation. These views are maintained with clearness and vigor in the very able and elaborate opinion of the court in the case of *Illinois Cent. R. Co. v. Illinois*, 146 U. S. 387, and are supported and illustrated by numerous adjudicated cases.

There is no claim that the state has ever granted the water lots in question to any one, and it is impossible to say that they have ever become private property for private purposes, so as to be the subject of conveyance in fee or otherwise. It is plain that as to these lots a breach of the covenants of seisin and of good right to convey has been established, but not so, however, as to the portion of lot 1 on the bank and in contact with the water. The title which the plaintiff acquired to this land by his deed, with its appurtenant riparian rights, is valuable property, and to that extent the covenants sued on remain unbroken. The plaintiff is entitled to recover damages corresponding only to the extent of the breach of these covenants.

8. The measure of damages in case of a breach of the covenants of seisin or of good right to convey going to the entire estate, is the amount of the consideration paid and interest thereon during the time the grantee has been deprived of the land, but not for more than six years. 2 Suth. Dam. § 593, and cases cited; *Blossom v. Knox*, 3 Pin. 262; *Conrad v. Trustees*, 64 Wis. 258; *Semple v. Whorton*, 68 Wis. 626; *Docter v. Furch*, 76 Wis. 161; *Larson v. Cook*, *post*, p. 564. The measure of damages in this case of failure of title to a part of the premises described in the deed is such fractional part of the whole consideration paid as the value, at the time of the purchase, of the part to which the title failed, bears to the whole block purchased, and inter-

est thereon during the time the plaintiff has been deprived of the use of the part to which the title failed, but not exceeding six years. *Semple v. Whorton,* 68 Wis. 627, and cases there cited; *Larson v. Cook, supra.* The evidence before us is not such as to enable us to determine what real or practical difference in value there is between the estate and incident riparian rights which the plaintiff acquired and the estate and rights which the deed to him purported to convey, within the meaning of this rule; and the judgment of the circuit court will be reversed, and the cause remanded to ascertain what damages the plaintiff ought to recover, and to give judgment accordingly, and for that purpose either party may produce such evidence as he may be advised.

*By the Court.*— The judgment of the circuit court is reversed, and the cause is remanded for further proceedings as above directed.