## Waters of Presque Isle Bay.

SHULL, Dep. Att'y-Gen., Dec. 27, 1928.—You present to this department a communication through Mr. W. E. Montgomery, Chief, Accounts and Maintenance, accompanied with a letter from Captain W. L. Morrison, Superintendent of the Pennsylvania State Park and Harbor Commission of Erie, Pennsylvania, in which a request is made that you be informed as to the jurisdiction in the commission relative to the waters of Presque Isle Bay outside of the harbor-line, and specifically as to the right in others in "mooring of house-boats and boats used by duck hunters, and the anchorage of a grain fleet during the winter season," etc.

For a solution of this problem, it may simplify our presentation by entering somewhat into the early history of the title to, and interest in, part of the lands surrounding the bay, the fee to which is vested absolutely in the Commonwealth. We then ascertain the rights of the Commonwealth as they are limited in the waters and bed of the bay.

The charter of Charles II, King of England, dated March 4, 1681, granted William Penn the territory known as Pennsylvania, lying between 39th and 42nd parallel north latitude, and extending from the Delaware River five degrees of longitude to a point in Lake Erie. The triangle formed by the 42nd parallel on the south, the lake on the north and the State of New York on the east was acquired under an Act of Congress by patent signed by George Washington, President of the United States, on Sept. 4, 1788.

This grant awarded Presque Isle Peninsula and also the bay lying within the peninsula and the mainland to the Commonwealth. By Act of Feb. 4, 1869, P. L. 105, the peninsula known as Presque Isle was patented to the Board of Directors of the Marine Hospital of Pennsylvania; but by the Act of Assembly approved May 11, 1871, P. L. 746, the Marine Hospital was

authorized to reconvey the peninsula to the Commonwealth of Pennsylvania, and deed thereto was executed, delivered and recorded in Erie County. This peninsula extends from the mainland bordering the lake northeasterly approximately five miles, thence eastwardly about three miles, and again southward a distance in excess of a mile. Within the arm formed by this plot and the shore of the lake lies Presque Isle Bay and the Erie Harbor.

On the south side of the bay and bordering thereon is a rectangular strip of land owned by the State, fully described in section 9 of the Act of May 27, 1921, P. L. 1180, the eastern boundary of which is the United States harbor-line, where it has a width of 1700 feet, and extending westwardly along the shore of the lake 9266 feet, where its width is 1400 feet. It will thus appear that the Commonwealth of Pennsylvania is owner in fee absolute of the land lying on the north, west and partially on the south side of the bay. Accompanying these grants are necessarily included the riparian rights in the State and access to the bay, forming a shore-line more than ten miles in length.

"The riparian right is the result of that full dominion which every one has over his own land, by which he is authorized to keep all others from coming upon it except upon his own terms. . . . It is the right of the owner to preserve and improve the connection of his property with the navigable water. The rights which a riparian proprietor has with respect to the water are entirely derived from his possession of the land abutting thereon:" Potomac Steamboat Co. *v.* Steamboat Co., 27 L. Ed. (U. S.)1070.

"The term does not include the right to appropriate the water front with old vessels to be dismantled or broken up, as it is the exclusive appropriation of the fee itself and not merely an exercise of an easement. It is not necessary that the act should interfere with navigation:" Town of North Hempstead *v.* Gregory, 66 N. Y. Supp. 28.

Our next inquiry relates to the rights of the Commonwealth as a state in the lake, which is one of the inland seas, and, therefore, is within the constitutional grant of admiralty and maritime jurisdiction to the courts of the United States. It is public and not private waters, and the land underlying it is not the subject of private ownership, but belongs to the state bordering on it, and the laws and rules regulating riparian rights on natural watercourses do not apply to it: 40 Cyc., 635.

The State owns the beds of navigable lakes below the low water-mark in its sovereign capacity in trust for the people and not in a proprietary capacity. The trust under which the title to the land is held is governmental in its nature and cannot be wholly aliened by the State. But for the purpose of enhancing the rights and privileges of the people, the State may by appropriate means grant the title to limited portions of the land under navigable waters, but not so as to divert them from their proper uses for the public welfare: Broward *v.* Mabry, 58 Fla. 398.

In McLennan *v.* Prentice, 85 Wis. 427, the court, in reference to a grant under the waters of Lake Superior, said: "In the absence of express and competent grant to some other, the State is the owner of the fee of all land under navigable waters in the Great Lakes, but in trust only for the public uses and purposes of navigation and fishing, and they may not be granted by the United States to a private person for a purely private purpose. . . . The State has no proprietary interest in them, and cannot abdicate its trust in relation to them, and, while it may make a grant to them for public purposes, it may not make an irrepealable one; and any attempted grant of the kind would be held, if not absolutely void on its face, as subject to revocation." Cited in 23 Am. Law Reps. 772.

The ownership, dominion and sovereignty of the lands covered by the tide-water within the limits of the several states belong to the respective states in which found, with the right to dispose of a portion where there is no substantial impairment of the public interest in the waters.

In Illinois Central R. R. Co. *v.* People of the State of Illinois, 36 L. Ed. (U.. S.) 1018, it is held that: "The land covered by fresh water in the Great Lakes over which is conducted an extended commerce with different states and foreign nations, is owned by the sovereignty of the State. These lakes possess all the general characteristics of open seas, except in the freshness of their waters and in the absence of the ebb and flow of the tide. In other respects they are inland seas, and there is no reason or principle for the assertion of dominion and sovereignty over and ownership by the state of lands covered by tide-waters that is not equally applicable to its ownership of and dominion and sovereignty over land covered by the fresh waters of these lakes."

There is a dearth of authority in the State Reports within our Commonwealth to guide us with regard to the rights of the State in navigable waters or the submerged lands underlying the lakes. The only case available which pertains to our inquiry is· that of Conneaut Lake Ice Co. *v.* Quigley, 225 Pa. 605, in which is cited with approval Pewaukee *v.* Savoy, 103 Wis. 271, wherein the principle or rule is expressed as follows: "It is the settled law that submerged lands of lakes within the boundaries of the State belong to the State in trust for public use, substantially the same as submerged lands under navigable waters at common law. Upon the admission of the State into the Union, the title to such land by operation of law vested in it in trust to preserve to the people of the State forever the common rights of fishing and navigation, and such other rights as are incident to public waters at common law, which trusteeship is inviolable, the State being powerless to change the situation by in any way abdicating its trust."

From these decisions it may be concluded that, as to the lands of Pesque Isle and the rectangular plot lying on the boundary of the lake south of the bay, the title is an unlimited or absolute fee which is vested in the Commonwealth, and in which it may exercise the same dominion over it and enjoy the same riparian rights which are accorded to any individual patentee of land bordering on the lake. But the waters being navigable and the submerged bed belonging to the State in its sovereignty is in trust to serve the public in providing transportation and commercial intercourse.

The legislature of the State represents its sovereignty, and through enactments by that body may grant rights not inimical to that of navigation upon the bosom of its navigable waters within or bordering upon the State.

The delegation of authority conferred upon the commission is by Act of May 27, 1921, P. L. 1180, which provides that: "The commission shall have power to enter upon and take possession of the lands hereafter dedicated and such other lands as may be acquired under the provisions of this act, and exercise full power to manage, control, protect, maintain and develop said lands for public park purposes, and for the improvement of the harbor of Erie, and to adopt, establish and enforce all necessary rules and regulations therefor."

Thus is conferred upon the commission jurisdiction over the lands which abut or border on the bay with riparian rights subjoined hereto, but it vests no dominion over the waters of the lake or its submerged land within the bay, nor can the commission, under the act above cited or any other which

we were able to find, protest against the invasion of house-boats, vessels, etc., now complained of, until further power is delegated to the commission by the legislature.

From C. P. Addams, Harrisburg, Pa.