CARROLL D. BESADNY, Secretary Department of Natural Resources
You have asked whether section 30.03 (4)(a), Stats., which authorizes the Department of Natural Resources (hereafter the department) to abate infringements of public rights in navigable waters, has any applicability to lakebed areas which have been legislatively granted to municipalities. For the reasons set forth in this opinion, I conclude that the department has authority to use section 30.03 (4)(a) to investigate and, if necessary, seek abatement of infringements of public rights in navigable waters in lakebed grant areas, but that authority is specifically limited to subjects not removed from the department's regulatory authority by section 30.05.
Section 30.03 (4)(a) provides a procedural mechanism for the department's investigation and resolution of violations of statutes relating to navigable waters, most of which appear in chapters 30 and 31. Significantly, section 30.03 (4)(a) also empowers the department to proceed against any "possible infringement of the public rights relating to navigable waters," with remedies ranging from an administrative hearing to judicial enforcement:
 Enforcement of forfeitures; abatement of nuisances; infringement of public rights.
 (4)(a) If the department learns of a possible violation of the statutes relating to navigable waters or a possible infringement of the public rights relating to navigable waters, and the department determines that the public interest may not be adequately served by imposition of a *Page 108 
penalty or forfeiture, the department may proceed as provided in this paragraph, either in lieu of or in addition to any other relief provided by law. The department may order a hearing under ch. 227 concerning the possible violation or infringement, and may request the hearing examiner to issue an order directing the responsible parties to perform or refrain from performing acts in order to fully protect the interests of the public in the navigable waters. If any person fails or neglects to obey an order, the department may request the attorney general to institute proceedings for the enforcement of the department's order in the name of the state. The proceedings shall be brought in the manner and with the effect of proceedings under s. 111.07 (7).
Section 30.03 establishes in the broadest of terms the department's authority to administratively address and seek judicial relief against activities which may not be statutory violations but which nonetheless harm public rights in navigable waters.
Section 30.05 provides:
 Applicability of chapter to municipally-owned submerged shore lands. Nothing in this chapter relative to the establishment of bulkhead or pierhead lines or the placing of structures or deposits in navigable waters or the removal of materials from the beds of navigable waters is applicable to submerged shore lands in Lake Michigan, the title to which has been granted by the state to a municipality.
Your question, then, asks whether section 30.05 operates to remove all state responsibility for navigable waters which are "submerged shore lands" once they have been granted to a municipality. To respond, I look first to the relevant statutes and next to Wisconsin cases construing the public trust doctrine rooted in article IX, section 1 of the Wisconsin Constitution.
Section 30.05 restricts the state's authority to act in three distinct areas: the establishment of bulkhead or pierhead lines, the *Page 109 
placing of structures or deposits in navigable waters, and the removal of materials from beds of navigable waters. These activities are presently regulated by sections 30.11, 30.12,30.13 (3) and 30.20. On its face, then, section 30.05
specifically leaves open the potential for state regulation of lakebed grant areas under any other statutory or common law provisions which may apply. As our supreme court noted in Wis.Environmental Decade, Inc. v. DNR, 85 Wis.2d 518, 527,271 N.W.2d 69 (1978), the Legislature has directed the department in chapters 29, 30, 31, 33 and 144 to carry out the state's affirmative obligations as trustee of its navigable waters. For example, activities not expressly withdrawn from state regulation by section 30.05 include diversions from lakes and streams, section 30.18; enlargement and protection of waterways, section30.19; regulation of wharves, piers and swimming rafts, section30.13; and even the chemical spraying of lake weeds, section 144.025 (2)(i). Wis. Environmental Decade, Inc. v. DNR,85 Wis.2d at 530.
Sections 30.03 and 30.05, however, only partially answer the question of what authority the state retains after the Legislature grants lakebed to a municipality. Article IX, section1 of the Wisconsin Constitution provides that the state's navigable waters must be "common highways and forever free," a condition of statehood under the Northwest Ordinance of 1787. Article IX, section 1 of the Wisconsin Constitution has generated a wealth of case law now commonly known as the "public trust doctrine." The court in Muench v. Public Service Comm.,261 Wis. 492, 501-02, 53 N.W.2d 514 (1952), explained the term as follows:
 At an early date in its history the Wisconsin court put itself on record as favoring the trust doctrine, that the state holds the beds underlying navigable waters in trust for all of its citizens, subject only to the qualification that a riparian owner on the bank of a navigable stream has a qualified title in the stream bed to the center thereof. *Page 110 
As trustee of lakebed lands, "[t]he state has no proprietary interest in them," McLennan v. Prentice, 85 Wis. 427, 444,55 N.W. 764 (1893), and thus cannot convey complete title to them. Even though the Legislature may make a grant of land for public trust purposes, "the state is powerless to divest itself of its trusteeship as to the submerged lands under navigable waters . . . ." Priewe v. Wisconsin State Land Imp. Co.,103 Wis. 537, 548, 79 N.W. 780 (1899). The state "cannot abdicate its trust in relation to them, and, while it may make a grant of them for public purposes, it may not make an irrepealable one; and any attempted grant of the kind would be held, if not absolutely void on its face, as subject to revocation." McLennan v. Prentice,85 Wis. at 445. These submerged lands, as the United States Supreme Court has recognized, can never be "placed entirely beyond the direction and control of the State." Illinois Central Railroad v.Illinois, 146 U.S. 387, 454 (1892).
Wisconsin cases thus make clear that the state, acting through its Legislature, may not abdicate its public trust in navigable waters, nor may it make an irrevocable grant of these waters or the lands beneath them. The state may, however, delegate some of its public trust responsibilities to units of government, as it has done through the department and local municipalities. InMuench, 261 Wis. 492, the court considered the "county board law," which allowed county boards to permit dam construction in the county irrespective of injury to public rights in navigable waters. The court held the statute an unconstitutional abdication of the public trust in navigable waters:
 It is a well-recognized principle of the law of trusts that a trustee charged with the duty of administering a trust cannot delegate to agents powers vested in the trustee which involve an exercise of judgment and discretion, though the trustee may delegate powers which are purely ministerial. . . . Such an attempted delegation of power [as the county board law] by the legislature, involving as it does a complete abdication of the trust. is therefore void. *Page 111 
Muench, 261 Wis. at 515-l-515m. Similarly, in Wis. EnvironmentalDecade, Inc. v. DNR, 85 Wis.2d at 534, the court reasoned that the Legislature "may legitimately delegate authority to local units of government to act in matters involving the state's `public trust' duties — provided that the delegation is in furtherance of the trust and will not block the advancement of paramount interests." Moreover, to insure that the delegation of authority is constitutionally permissible, the delegation must be bounded by clear limits and definite standards. Menzer v. ElkhartLake, 51 Wis.2d 70, 81-85, 186 N.W.2d 290 (1971); Madison v.Tolzmann, 7 Wis.2d 570, 575, 97 N.W.2d 513 (1959).
Because section 30.05 lacks definite standards for the exercise of authority, it cannot be considered a "delegation" of the state's public trust responsibilities. The statute does limit the department's permitting authority for three specific activities. Section 30.05, however, does nothing to alter or undo the revocability of lakebed grants, nor does it undermine the state's paramount public trust responsibilities. Rather, section 30.05
simply removes the department's permitting authority for those activities specified. Thus, for example, DNR lacks authority to abate an infringement of public waters in a lakebed grant area that consists solely of the failure to get a section 30.12
permit. But the state still retains all of its undelegated and non-delegable powers to administer the trust, along with the duty to revoke the grant if its conditions are violated or if the grant itself authorizes uses inconsistent with the public trust doctrine. This is a duty of constitutional, not statutory, dimensions, and reaches back to the earliest cases declaring the inalienability of public trust lands.
In its creation of section 30.03 (4)(a), the Legislature has insured that the state retains its paramount authority over all navigable waters, even those whose beds have been legislatively granted to municipalities. Using its investigatory and fact-finding power under section 30.03 (4)(a), the department has the mechanism to determine whether the activities causing the infringement are in violation of the lakebed grant, making it *Page 112 
subject to revocation or reversion. The procedure established by section 30.03 (4)(a) also enables the department to investigate, and a court to finally determine, whether a legislative lakebed grant authorizes activities which are in violation of the trust. The provision for judicial enforcement in section 30.03 (4)(a) is particularly significant, since the judicial branch is ultimately responsible for determining whether the lakebed grant or the public trust itself has been breached. Priewe v. Wisconsin StateLand Improvement Co., 93 Wis. 534, 551, 67 N.W. 918 (1896);State v. Village of Lake Delton, 93 Wis.2d 78, 92,286 N.W.2d 622 (Ct.App. 1979).
I do not reach your fourth question, whether the procedures of section 30.03 permit abatement of violations of lakebed grants on the basis that they are "statutes relating to navigable waters," because lakebed grants are not part of the general body of laws codified as "The Wisconsin Statutes." Instead, they are published only as "session laws," which include legislative acts of special, private or local effect. See Preface to the 1987-88 Wisconsin Statutes, p. iii; sections 35.15 and 35.18.
In conclusion, then, section 30.03 (4)(a) applies to lakebed grant areas except for activities specifically removed from state authority by section 30.05. Because of its non-delegable public trust responsibilities, the state acting through the department retains authority to abate the infringement of public rights in navigable waters when those activities are not authorized by the legislative grant. When activities which infringe public rights in navigable waters are authorized by the grant, the department may investigate, and a court may determine, whether the grant itself violates the public trust doctrine.
DJH:MS *Page 113