PRIEWE, Respondent, vs. WISCONSIN STATE LAND & IMPROVEMENT COMPANY, Appellant.

*June 8 — June 22, 1899.*

Res adjudicata: *Constitutional law: Police power: Public health: Drainage of navigable lakes: Soil under navigable waters: Riparian rights: Remedies: Estoppel.*

1. Where a case has been before the supreme court on an appeal involving the sufficiency of the complaint, the decision there made is binding, for the purpose of a subsequent appeal, on all questions covered by the former decision, leaving nothing which can be questioned except whether the facts which were then said to constitute a sufficient cause for relief have been found to exist by the trial court, and whether any material part of such findings is against the clear preponderance of the evidence.

2. Whether a legislative enactment was designed to further some governmental function, or to further private gain, is a judicial question, and the court is not concluded by the wording of the act as to where the truth lies, in determining a controversy as to the purpose of the enactment.

3. The legislature, under the recited purpose of promoting the public health, enacted that one R., his heirs and assigns, might complete the drainage of a lake, theretofore partially drained at the expense of persons benefited, and in consideration therefor all the land within the meander line of the lake was to be conveyed to him, he being required to repay to those who had paid the cost of the first drainage, out of the proceeds of the reclaimed lands that might be sold by him, after reimbursing himself for his expenditures for doing the work, fifty per cent. of their respective payments. R. caused a corporation to be formed to which he conveyed his granted rights and privileges, in consideration of substantially all the stock of the corporation. In an action by a riparian proprietor to prevent carrying out the scheme of drainage, to recover damages for a partial drainage, and to compel a restoration of the water to the condition in which the corporation found it, *held* that, aside from the alleged purpose of promoting the public health, there was an absence of legal authority to justify the acts complained of.

4. It is the duty of the legislature to preserve for the benefit of all the people of the state, forever, the enjoyment of the navigable waters within its boundaries.

5. The navigable waters of the state belong to the state, and the lands under them, in all situations, so far as it is necessary to preserve inviolate the common right to enjoy those incidents which are not the subject of private ownership in navigable waters at common law.

6. An attempt by any person or corporation to violate public rights in the navigable waters of the state, to the special injury of a particular person, may be restrained by a private action.

7. It appeared from the evidence that the lake was a navigable body of water, after the first drainage, to within fifty feet of the original shore line of plaintiff's property; that thereby none of the lake bed was uncovered except a strip averaging about 100 feet inside the shore line; that, aside from that, the entire lake bed was covered with water and could be traversed by boats for the purpose of hunting and fishing; that such condition was destroyed by the second drainage to plaintiff's damage; that a restoration to the conditions existing prior to the second drainage would promote the public health; and that the primary purpose of the act of the legislature under authority of which the acts of defendant were done and its

claims made was to convert that which was public into that which was private. *Held*, that there was a manifest excess of constitutional legislative authority.

8. An estoppel *in pais* requires, as to the person against whom it is claimed, opportunity to speak, duty to speak, failure to speak, and reliance in good faith upon such failure, and is not a defense to an action where it appeared that no benefit, but rather damage, accrued to plaintiff by the acts of defendant; that the action was commenced seasonably after actual damage; that defendant's operations were solely to acquire title to the bed of the lake; that its grantor procured the passage of a legislative enactment, for that purpose; and that before any considerable expense had been incurred, there had been a decision of the supreme court to the effect that submerged lands of navigable lakes cannot, by legislative enactment in furtherance of private interests, be made the subject of private ownership.

APPEAL from a judgment of the circuit court for Milwaukee county: D. H. JOHNSON, Circuit Judge. *Affirmed.*

Action by a riparian proprietor to prevent the carrying out of a scheme for draining Muskego lake, a navigable body of water in Waukesha county, Wisconsin, naturally covering some 3,500 acres of land, for the ostensible purpose of promoting the public health, but actual purpose, as alleged, of enabling the promoters of the scheme to possess themselves of the title to the lake bed; to recover damages caused to plaintiff by a partial draining of the lake; and to compel a restoration of the water to the condition in which defendant found it. In 1887 a law [ch. 169] was passed authorizing a lowering of the lake at the cost of the owners of wet lands adjacent thereto, which might be benefited thereby. Under such act the lake was somewhat reduced, drawing the water away from the natural water line of plaintiff's land from fifty to 150 feet, and for which he was assessed for the benefits to fifteen acres of land, and paid a portion of the cost. In 1891 a law [ch. 202] was passed authorizing James Reynolds, his heirs and assigns, to complete the drainage of the lake, ostensibly to promote the public health, and as con-

sideration therefor, by the terms of the law, all the land within the meander line of the lake was conveyed to him, he being required to repay, to those who paid the cost of the first drainage, fifty per cent. of their respective payments, out of the proceeds of the reclaimed lands that might be sold by him, after reimbursing himself for his expenditures in doing the work. Reynolds caused a corporation to be formed soon after the date of the act of 1891, to which he conveyed his granted rights and privileges in consideration of substantially all the stock of the corporation. Prior to the commencement of this action such corporation, the defendant herein, so far progressed with the drainage scheme as to materially reduce the lake, to the damage of plaintiff, as alleged, and it purposed going on with the work to completion. The purpose of this action was to recover compensation for the damages caused to plaintiff by taking the water of the lake from his land, and to obtain a mandatory injunction compelling defendant to restore the lake to the condition which existed before its operations commenced. There was a demurrer to the complaint, overruled because it contained sufficient allegations of fact to show, if true, that the purpose of the act of 1891 was not to promote the public health, but to convert the bed of the lake into private property, a thing the state had no power to authorize.

Defendant answered the complaint, and the issues were tried, with the following result as to facts, leaving out all merely formal matters: Plaintiff owns land with a frontage of 100 rods on Muskego lake, a navigable body of water in its natural condition, fed by natural springs and spring brooks, and of a depth of from one to forty feet, and an extent, inside the government meander lines, of three and one-half miles one way by about two miles the other. The use of the lake, before the acts of defendant complained of, was valuable to plaintiff for the purpose of boating, and for its influence upon his farm lands. Under the act of 1887 the

level of the lake was lowered about four and one-half feet,
thereby uncovering from fifty to 150 feet in width of lake
bottom in front of plaintiff's land, which he thereafter occu-
pied and used.    Such lowering of the lake level left a body
of water substantially as serviceable to plaintiff as before.
It'was accessible to plaintiff's land by boats the same as for-
merly, except that it was more difficult to approach the shore
line.    In 1868 [ch. 198, P. & L. Laws of 1868] a legislative
grant was made to James Reynolds substantially the same
as the act of 1891, he then being a member of the legisla-
ture.    In 1869 [ch. 326, P. & L. Laws of 1869] such act of
1868 was repealed.    In 1890 Reynolds, who was then a resi-
dent of the state of Illinois, revived the scheme of obtaining
control of the lake bed, and the result was the act of 1891.
The purpose of such act, though ostensibly public, was in fact
private.    While the recited purpose was the promotion of the
public health, the real purpose was to enable the grantee of
the act, his heirs or assigns, to obtain title to the bed of the
lake.    A few days after the act of 1891 was passed Reynolds
caused the defendant corporation to be formed, and conveyed
to it all his rights under such act, including the right to the
bed of the lake within the government meander line, the con-
sideration being $299,700 in the capital stock of the corpo-
ration, that being all of the stock except three shares taken
by as many persons in order to organize the corporation,
$80,000 par value of which stock he gave to persons who en-
abled him to secure the passage of the act through the legis-
lature.    The defendant caused the work of draining the lake,
under the act of 1891, to be commenced in 1892, doing but
little work, however, that year.    The work was continued in
1893 and in 1894, but not in the vicinity of plaintiff's land,
and not so as to make the effect of the operations apparent
to him till some time in 1894.    Plaintiff never acquiesced in
defendant's acts which operated to lower the lake level about
four feet, leaving a considerable portion of the lake bed cov-

ered with water consisting of one body about three fourths of a mile long by eighty rods to half a mile wide, and several navigable channels, all connected with each other in times of high water. Instead of the work done by defendant, of reclaiming the lake bed, promoting the public health, it has so far uncovered the bottom and left it wet and unfit for cultivation that its condition is injurious to the public health. In 1895 the state land commissioners made a formal convey- ance to defendant of the lake bed as it existed prior to the first drainage. The operations of defendant have resulted in withdrawing the water of the lake from plaintiff's land, destroying his business of operating pleasure boats on the lake, preventing his using his land as a landing place for boats navigating the lake, and drying up the water in his wells, and otherwise injuring his property to his damage in the sum of $1,000.

From such facts the court decided that plaintiff's shore line, by the operations conducted under the act of 1887, was extended as the water of the lake was drawn down; that the act of 1891, attempting to convert the lake bed to private ownership, was void; and that plaintiff was entitled to judg- ment requiring defendant to restore the lake to the condi- tion existing before its operations commenced, and to an injunction prohibiting any further work under such act as to Muskego lake, and to a judgment for costs. Judgment was entered accordingly.

*Hugh Ryan*, attorney, and *Thos. M. Kearney*, of counsel, for the appellant, contended, *inter alia*, that an act of the legislature being assailed, the inquiry is limited to the ques- tion of power in the law-making body, and does not extend to the matter of necessity, expediency, the motives of the legislature, or reasons which were placed before them to in- duce the passage of the act. *Brodhead v. Milwaukee*, 19 Wis. 629; *Smeaton v. Martin*, 57 Wis. 364; *Wis. R. I. Co. v. Manson*, 43 Wis. 255; *U. S. v. Des Moines N. & R. Co.* 142

Priewe vs. Wisconsin State Land & Imp. Co.

U. S. 510; *Powell v. Pennsylvania*, 127 U. S. 678; *Fletcher v. Peck*, 6 Cranch, 130; *State ex rel. Att'y Gen. v. Cunningham*, 81 Wis. 440, 509; *Angle v. C., St. P., M. & O. R. Co.* 151 U. S. 1; *Forsythe v. Hammond*, 68 Fed. Rep. 774; *Wentworth v. Racine Co.* 99 Wis. 26; *State v. Gerhardt*, 145 Ind. 439; *Ex parte McCardle*, 7 Wall. 506; *Doyle v. Continental Ins. Co.* 94 U. S. 535. In considering the question of power in the legislature, it is the duty of the court to apply every possible presumption in favor of the validity of the statute until its validity is shown beyond a rational doubt. *Fletcher v. Peck*, 6 Cranch, 87–128; *Dartmouth College v. Woodward*, 4 Wheat. 625; *Livingston Co. v. Darlington*, 101 U. S. 407; *Sinking-Fund Cases*, 99 U. S. 700–719; *Powell v. Pennsylvania*, 127 U. S. 684; *Rooker v. Norton*, 1 Pin. 195; *Mills v. Charleton*, 29 Wis. 400; Cooley, Const. Lim. (4th ed.), 225; *Rankin v. Colgan*, 92 Cal. 605. If the act in question is capable of two constructions, one of which will invalidate and the other of which will give it force and effect, the latter construction will prevail. *Johnson v. Milwaukee*, 88 Wis. 383; *Palms v. Shawano Co.* 61 Wis. 211; *Atkins v. Fraker*, 32 Wis. 510; *Bound v. Wis. Cent. R. Co.* 45 Wis. 543. The act challenged being a legitimate exercise by the legislature of the police power, the constitutional provisions against taking property without due process of law and against impairing the obligations of contracts, and the doctrine of just compensation and uniform taxation, have no legitimate application. *Baker v. Boston*, 12 Pick. 184–192; *Davenport v. Richmond*, 81 Va. 636; *Bliss v. Kraus*, 16 Ohio St. 54; *Pine City v. Munch*, 42 Minn. 342; *Butchers' Union S. H. & L. S. L. Co. v. Crescent City L. S. L. & S. H. Co.* 111 U. S. 746; *Fertilizing Co. v. Hyde Park*, 97 U. S. 660; *Wilcox v. Hemming*, 58 Wis. 144; *Bittenhaus v. Johnston*, 92 Wis. 588; *State v. Heinemann*, 80 Wis. 253; *Chicago, M. & St. P. R. Co. v. Milwaukee*, 97 Wis. 418; 1 Dillon, Mun. Corp. § 141; *Green v. Swift*, 47 Cal. 536; *Newark & S. O. H. C. R. Co. v.*

*Hunt,* 50 N. J. Law, 308; *City Council of Charlestown v. Werner,* 46 S. C. 323; *Dingley v. Boston,* 100 Mass. 544; *Miller v. Craig,* 11 N. J. Eq. 175; *Egan v. Hart,* 45 La. Ann. 1358; *Ruch v. New Orleans,* 43 La. Ann. 275; *Dunbar v. Augusta,* 90 Ga. 390; *Ex parte Shrader,* 33 Cal. 279; Prentice, Police Power, 56, 57, 59; *Train v. Boston D. Co.* 144 Mass. 532; *Carleton v. Rugg,* 149 Mass. 550; *Comm. v. Alger,* 7 Cush. 53; *Raymond v. Fish,* 51 Conn. 80; *Keller v. Corpus Christi,* 32 Am. Rep. 613; 2 Dillon, Mun. Corp. § 955; *Maleverer v. Spinke,* 1 Dyer, 35b; *Respublica v. Sparhawk,* 1 Dall. 357; 2 Kent, Comm. 338; *Russell v. New York,* 2 Denio, 461; *State v. Blake,* 36 N. J. Law, 447; Sedgwick, Stat. & Const. Law, 499, 502; 1 Dillon, Mun. Corp. § 141, and cases cited; *Beer Co. v. Massachusetts,* 97 U. S. 25; *Scovill v. McMahon,* 62 Conn. 378; *Mariner v. Schulte,* 13 Wis. 775; *Dore v. Gray,* 2 Term, 358; *British C. P. Mf'rs v. Meredith,* 4 Term, 794.

The title to the lands in question being in the state, the state had the right to dispose of any portion thereof whenever that could be done without substantial impairment of the interests of the public in the waters remaining. Gould, Waters (1st ed.), § 36; *Comm. v. Alger,* 7 Cush. 53, 77; *Hoboken v. Pa. R. Co.* 124 U. S. 656; *Ill. Cent. R. Co. v. Illinois,* 147 U. S. 387; *Fletcher v. Peck,* 6 Cranch, 127; *McCready v. Virginia,* 94 U. S. 391; *Bushnell v. Beloit,* 10 Wis. 195; *Wis. Cent. R. Co. v. Taylor Co.* 52 Wis. 37; *State ex rel. M., T. & W. R. Co. v. Common Council of Tomahawk,* 96 Wis. 73–82; *Sparrow v. Comm'rs,* 56 Mich. 567; *Stevens v. P. & N. R. Co.* 34 N. J. Law, 532. The act assailed constituted an offer by the state to Reynolds, his heirs and assigns, that, if he or they would do the work therein required to be performed, compensation would be made by conveying the reclaimed lands, and this offer when accepted became a contract binding upon the parties thereto, subject to the same rules which govern the contractual relations of private indi-

Priewe vs. Wisconsin State Land & Imp. Co.

viduals. *Fletcher v. Peck*, 6 Cranch, 87, 135; *Chapin v. Crusen*, 31 Wis. 209; *State v. Milwaukee G. L. Co.* 29 Wis. 454; *Att'y Gen. v. Railroad Cos.* 35 Wis. 425; *Metzel v. State*, 16 Wis. 370; *Sholes v. State*, 2 Pin. 499; *Baxter v. State*, 9 Wis. 38; *Bentley v. State*, 73 Wis. 416; *Veeder v. Guppy*, 3 Wis. 502–534; *Paige v. Kolman*, 93 Wis. 435; *Montgomery v. Kasson*, 16 Cal. 189; *Davis v. Gray*, 16 Wall. 203; *Cornell v. Hichens*, 11 Wis. 368, and cases cited in notes; *State ex rel. Damman v. Comm'rs*, 4 Wis. 414; *State ex rel. Voight v. Hoeflinger*, 31 Wis. 257, 263; *Sparrow v. Comm'rs*, 56 Mich. 567; *State v. F. & P. M. R. Co.* 89 Mich. 481; *Comm. v. Andre's Heirs*, 3 Pick. 224; Bigelow, Estoppel (5th ed.), 341; *People v. Hagadorn*, 104 N. Y. 516; *U. S. v. McLaughlin*, 30 Fed. Rep. 147; *Hough v. Buchanan*, 27 Fed. Rep. 328; *Indiana v. Milk*, 11 Fed. Rep. 389; *Att'y Gen. v. Ruggles*, 59 Mich. 124; *U. S. v. Dallas M. R. Co.* 41 Fed. Rep. 493. The title to the lands being in the state, and the state having the right to convey them, the conveyance under the act cannot be questioned in the absence of fraud. *Wis. River Imp. Co. v. Manson*, 43 Wis. 265; *Sparrow v. Comm'rs*, 56 Mich. 567; *U. S. v. Des Moines N. & R. Co.* 142 U. S. 510; *Chandler v. Calumet & H. M. Co.* 149 U. S. 79; *Mendota Club v. Anderson*, 101 Wis. 479; *Parley's Park S. M. Co. v. Kerr*, 3 Utah, 235; *E. G. Blakslee Mfg. Co. v. E. G. Blakslee's Sons I. Works*, 129 N. Y. 155; *Fuller v. Shedd*, 161 Ill. 462, and cases cited; *Smelting Co. v. Kemp*, 104 U. S. 645; *Wells v. Francis*, 7 Colo. 396. It appearing affirmatively that the defendant performed the work required by ch. 202, Laws of 1891, it does not, in this action, lie in the mouth of the plaintiff, who is not a party to the contract, to urge, and is not within the provision of the court to find, that the contract was not performed by defendant according to the requirements of the law. *Wis. River Imp. Co. v. Manson*, 43 Wis. 255; *La Pointe v. Ashland*, 47 Wis. 251; *Nobles v. Magnolia C. Co.* 69 Tex. 434; *Smelting Co. v. Kemp*, 104 U. S.

636; *Field v. Seabury,* 19 How. 323; *Hagar v. Reclamation Dist.* 111 U. S. 701; *Mills Co. v. Railroad Cos.* 107 U. S. 566; *Lee v. Johnson,* 116 U. S. 48; *Sparks v. Pierce,* 115 U. S. 408; *Bohall v. Dilla,* 114 U. S. 47. The contract between defendant and the state having been performed by defendant to the satisfaction of the state, and the state having paid the defendant for the work performed by delivery of the patent of the lands drained, the title of the defendant in and to the lands conveyed has become vested and cannot be divested at the suit of a private individual. *Fletcher v. Peck,* 6 Cranch, 87; *Angle v. C., St. P., M. & O. R. Co.* 151 U. S. 1. Plaintiff is estopped from securing the relief which he demands in this court of equity. *Frederick v. Douglas Co.* 96 Wis. 426; *Reuter v. Lawe,* 94 Wis. 305; *State ex rel. Att'y Gen. v. Janesville W. Co.* 92 Wis. 504; *Paine L. Co. v. Oshkosh,* 89 Wis. 459.

*Orren T. Williams,* attorney, and *Geo. L. Williams,* of counsel, for the respondent, contended that the plaintiff had valuable vested riparian rights in Muskego lake of which the state cannot deprive him, except by a constitutional exercise of the power to appropriate property for public use. *Delaplaine v. C. & N. W. R. Co.* 42 Wis. 214; *Boorman v. Sunnuchs,* 42 Wis. 233; *Bowman's Devisees v. Wathen,* 2 McLean, 376, 382, 383; Gould, Waters, §§ 204, 246; 2 Washb. Real Prop. (5th ed.), 367; *Kaukauna W. P. Co. v. G. B. & M. C. Co.* 75 Wis. 390; 2 Hilliard, Real Prop. (3d ed.), 100; *Diedrich v. N. W. U. R. Co.* 42 Wis. 262; *Yates v. Milwaukee,* 10 Wall. 497, 504; *Saunders v. N. Y. C. & H. R. R. Co.* 23 N. Y. Supp. 927, 932; *Chapman v. O. & M. R. Co.* 33 Wis. 629; *Ill. Cent. R. Co. v. Illinois,* 146 U. S. 387; *Black River Imp. Co. v. La Crosse B. & T. Co.* 54 Wis. 682; *Jones v. Johnston,* 18 How. 156; *Chicago & N. W. R. Co. v. Groh,* 85 Wis. 641; *Shively v. Bowlby,* 152 U. S. 35; *Priewe v. Wis. S. L. & I. Co.* 93 Wis. 534; *J. S. Keator L. Co. v. St. Croix B. Corp.* 72 Wis. 98; *Warren v. Chambers,* 25 Ark. 120;

*Municipality No. 2 v. Orleans Cotton Press*, 18 La. 122; *Cedar Lake H. Co. v. Cedar Creek H. Co.* 79 Wis. 297; *Wis. W. Co. v. Winans*, 85 Wis. 39; *In re Theresa Drainage Dist.* 90 Wis. 301. The state had no such proprietary title to the bed of Muskego lake that it could pass the title to defendant's assignor. *Hardin v. Jordan*, 140 U. S. 371; *McLennan v. Prentice*, 85 Wis. 444; *Ill. Cent. R. Co. v. Illinois*, 146 U. S. 452; *Bradshaw v. Duluth I. M. Co.* 52 Minn. 59; *Stockton v. B. & N. Y. R. Co.* 32 Fed. Rep. 9. The beds of waters in which titles of riparian owners do not extend to the center belong to the several states in which they are located, as sovereigns. *Barney v. Keokuk*, 94 U. S. 324; *Pollard's Lessee v. Hagan*, 3 How. 212; *Knight v. U S. L. Asso.* 142 U. S. 183; *Den v. Jersey Co.* 15 How. 426; *St. Clair Co. v. Lovingston*, 23 Wall. 68; *Shively v. Bowlby*, 152 U. S. 1; *Goodtitle v. Kibbe*, 9 How. 471; 3 Kent, Comm. 427; *J. S. Keator L. Co. v. St. Croix B. Corp.* 72 Wis. 89; *Gilman v. Philadelphia*, 3 Wall. 726. Such title is by sovereignty and not a proprietary title. *Martin v. Waddell*, 16 Pet. 367; *Saunders v. N. Y. C. & H. R. R. Co.* 23 N. Y. Supp. 932; *McLennan v. Prentice*, 85 Wis. 428. Treated as a grant by a proprietor the act of the legislature is entirely inoperative because the grantor had no such title as he attempts to convey. *Martin v. Waddell*, 16 Pet. 367, 410; *McLennan v. Prentice*, 85 Wis. 427; *Stockton v. B. & N. Y. R. Co.* 32 Fed. Rep. 9; *Varick v. Smith*, 9 Paige, 547; *Bradshaw v. Duluth I. M. Co.* 52 Minn. 59; *Willow River Club v. Wade*, 100 Wis. 86; *Pewaukee v. Savoy*, 103 Wis. 271; *Cedar Lake H. Co. v. Cedar Creek H. Co.* 79 Wis. 299; *People v. N. Y. & S. I. F. Co.* 68 N. Y. 71; *Muskego v. Drainage Comm'rs*, 78 Wis. 40; *Emporia v. Soden*, 25 Kan. 588; *Boyd v. U. S.* 116 U. S. 616. Ch. 202, Laws of 1891, is unconstitutional, and comes within the prohibition of secs. 31, 32, art. IV, Const. Wis., or the amendment of 1871. *Nevil v. Clifford*, 63 Wis. 435; *Kimball v. Rosendale*, 42 Wis. 407; *State ex rel. Church v. Cheek*, 77 Wis.

284; *School Dist. v. Ins. Co.* 103 U. S. 707; Cooley, Const. Lim. (5th ed.), 483; *State ex rel. Sanderson v. Mann,* 76 Wis. 469; *State ex rel. Nunnemacher v. Mann,* 76 Wis. 498; *State ex rel. Davidson v. Gorman,* 40 Minn. 232; *Opening of Ruan St.* 132 Pa. St. 257; 1 Morawetz, Priv. Corp. §§ 10–13; Lewis, Em. Dom. §§ 163, 165; *In re Niagara Falls & W. R. Co.* 108 N. Y. 375; *Citizens' W. W. Co. v. Parry,* 59 Hun, 202; *S. C.* 128 N. Y. 669; *Wis. W. Co. v. Winans,* 85 Wis. 42; *State ex rel. Cothren v. Lean,* 9 Wis. 279; *Clark v. Janesville,* 10 Wis. 191; *Evans v. Phillipi,* 117 Pa. St. 237; *McCarthy v. Comm.* 110 Pa. St. 246; *McLennan v. Prentice,* 85 Wis. 428. Said ch. 202, Laws of 1891, is also unconstitutional as being in conflict with sec. 10, art. VIII, Const. *Wis. W. Co. v. Winans,* 85 Wis. 26; Gould, Waters, § 416; *Valparaiso City W. Co. v. Dickover,* 17 Ind. App. 233; *Isom v. M. C. R. Co.* 36 Miss. 316.

MARSHALL, J.   There are no questions of law to be considered on this appeal.   When the case was here before on an appeal involving the sufficiency of the complaint (93 Wis. 534), it was decided: first, that on the facts alleged the operations under the act of 1887 did not affect plaintiff's riparian rights, as they left him with the privilege of passing over the uncovered lands between the original and new shore lines to the navigable waters of the lake; second, that the act of 1891 was intended solely to convert the bed of the lake from public to private ownership in the guise of a pretended public purpose, that of promoting the public health; third, that whether the ostensible public purpose of the act was the actual purpose is not concluded by its recitals, but may be inquired into and determined by the court as a question of fact, and the act sustained or condemned according to the finding; and fourth, that the state is powerless to divest itself of its trusteeship as to the submerged lands under navigable waters in this state under the guise

of promoting the public health. That decision is binding for the purpose of this appeal on all questions covered by it. It stands as the infallible truth, leaving nothing which can now be questioned, except whether the facts which were then said to constitute a sufficient cause for equitable relief have been found to exist by the trial court, and whether any material part of such findings is against the clear preponderance of the evidence. *Lathrop v. Knapp*, 27 Wis. 214, 37 Wis. 307; *Case v. Hoffman*, 100 Wis. 314.

Appellant's counsel has furnished us with the result of much research as regards the scope of the police power of the state and the supreme authority of the legislature to exercise such power, all of which is interesting but not material, because the subject is not before us. That the legislature has a broad discretion in the exercise of police powers cannot be questioned. Within that discretion its dominion is supreme; but whether a legislative enactment was designed to further some governmental function, or to further private gain, as said in the former opinion, is a judicial question and counsel have failed to produce any authority to the contrary; and even if such authority were produced it could not change the rule for the purposes of this case. Not only, as indicated, is it a judicial question of fact which is presented by the controversy as to the purpose of the act of 1891, but the court is not concluded by the wording of the act as to where the truth lies. Otherwise private property rights could easily be taken away from one, and with or without consideration vested in another, under the guise of the promotion of some public purpose falsely recited in a legislative enactment.

Leaving out of view the pretense that the draining of the lake was for the purpose of promoting the public health, not a shadow of legal authority exists to justify the acts complained of. The legislature has no more authority to emancipate itself from the obligation resting upon it which was

Priewe vs. Wisconsin State Land & Imp. Co.

assumed at the commencement of its statehood, to preserve for the benefit of all the people forever the enjoyment of the navigable waters within its boundaries, than it has to donate the school fund or the state capitol to a private purpose. It is supposed that this doctrine has been so firmly rooted in our jurisprudence as to be safe from any assault that can be made upon it. The navigable waters of the state belong to the state, and the lands under them, in all situations, so far as are necessary to preserve inviolate the common right to enjoy those incidents which were not the subject of private ownership in navigable waters at common law; and any attempt by any person or corporation to violate such public rights to the special injury of a particular person, as when an attempt is made to take from such person some incident of his title to the shore of navigable waters, may be restrained by a private action. The general character of the state's title to submerged lands under navigable waters has been treated so fully several times within the past few years that there is nothing more that can be profitably said, even if the subject were open to discussion and decision in this case. Therefore we leave it by referring to such prior decisions. *Priewe v. Wis. St. L. & I. Co.* 93 Wis. 534; *Willow River Club v. Wade,* 100 Wis. 86; *Mendota Club v. Anderson,* 102 Wis. 479; *Pewaukee v. Savoy, ante,* p. 271.

The only real controversy open for our consideration is, Are the findings of fact made by the trial court supported by the evidence? That must be answered in the affirmative, and without the answer being accompanied by any extended discussion of the evidence. The record is very long, covering some 355 pages, all of which has been examined with that care necessary to a careful judicial determination of the question. The evidence is conflicting upon many of the material facts, but there is abundance of evidence in the record to the effect that the lake was a navigable body of water

after the first drainage, in places, up to within fifty feet of
the original shore line of plaintiff's property; that none of
the lake bed was uncovered except a strip averaging about
100 feet wide inside the shore line; that aside from that the
entire lake bed was covered with water, and during most of
the open season of the year it could be traversed by boats
for the purposes of fishing and hunting; that such condition
was destroyed by the second drainage to the damage of
plaintiff; that a restoration of the lake to the condition it
was in prior to such second drainage will promote the pub-
lic health, and that the primary purpose of the act of 1891,
under the authority of which such second drainage was made
and defendant claims title to the lake bed, was to convert
that which was public and held by the state without power
of alienation into that which was private,— a manifest ex-
cess of constitutional legislative authority.

A contention is made that plaintiff's omission to com-
mence his action till a large amount of money had been ex-
pended by defendant under the act of 1891 should be held
to preclude him from obtaining equitable relief; that by his
silence defendant was permitted to go on and incur expense
on the faith of its legislative authority and the acquiescence
of plaintiff, and that he should not now be allowed to change
his position to the prejudice of the defendant. We are un-
able to see wherein the attitude of plaintiff misled the de-
fendant in the slightest degree. Its reliance was wholly on
the legislative enactment of 1891. There was no benefit
which accrued to plaintiff by the second drainage of the
lake, but on the contrary it was a serious damage to his
property. Seasonably after actual damage to such property
commenced, this action was instituted. The court found as
a fact that the purpose of defendant's operations was solely
to acquire the title to the lake bed, and that its grantor pro-
cured the passing of the law of 1891 for that purpose; and it
further appears that before it incurred any considerable ex-

pense there was a decision by this court to the effect that submerged land of navigable lakes cannot, by legislative enactment, in the furtherance of private interests, be made the subject of private ownership. *McLennon v. Prentice*, 85 Wis. 427. So we have a case where defendant, in furtherance of a scheme which its officers and agents knew, or ought to have known, had been in principle condemned by this court, proceeded to a point in its operations where actual special damage accrued to the plaintiff, whereupon he, with reasonable diligence, commenced an action to restrain the further prosecution of the work. If there is any element of equitable estoppel in that situation we are unable to discover it. One of the first essentials to an equitable estoppel is that the party claiming the benefit of it must proceed in good faith. Here defendant purposed to obtain title to the lands from the state, which it knew, or if it did not know was negligent in not knowing, the state was powerless to subject to private ownership. Another essential of equitable estoppel is that the attitude of the person against whom it is claimed must have materially influenced the conduct of his adversary, or such person must be so circumstanced as to reap some benefit from such conduct. Here, as indicated, neither of these elements exists. There was no blowing hot and blowing cold alternately, no proceeding in good faith relying upon acquiescence because of the silence of plaintiff, with the circumstance of gain to plaintiff as an explanation of such silence. An equitable estoppel *in pais* requires, as to the person against whom the estoppel is claimed, opportunity to speak, duty to speak, failure to speak, and reliance in good faith upon such failure. Here, at best, none of such elements existed except opportunity to speak.

A literal interpretation of the judgment would render it unnecessarily harsh. It would require a large expenditure of money without any resulting benefit to plaintiff. It may easily be read to require defendant to fill up all the excava-

tions made in the course of its operations under the act of 1891 between Wind lake and Muskego lake, and in the bed of the latter lake. We assume that it was only intended by the judgment to require such filling up of excavations as will restore the natural condition of the water in Muskego lake, as it would exist had there been no attempt to drain the lake under the act of 1891; that so much of the canal between Wind lake and Muskego lake and the canal in Muskego lake must be filled up as will accomplish that result. Such is probably what was in the judicial mind and the judgment may reasonably be read that way. As so understood it needs no modification.

*By the Court.*— The judgment of the circuit court is affirmed.

DODGE, J., took no part.