L.P. VOIGT, Secretary, Department of Natural Resources
You have asked my opinion regarding several questions having to do with navigable drainage ditches. Specifically, you ask:
 1. Are the provisions of ch. 30 (Navigable Waters) (e.g., 30.12,[1] 30.18,[2] 30.19[3] and 30.20[4]), ch. 31 (Dams and Bridges) and sec. 87.30
(Flood plain zoning), Wis. Stats., applicable to:
 a. Navigable ditches that were originally navigable streams or lakes before ditching. I have been informed that when surveys of central Wisconsin took place that the surveyors found many of the townships under 20 to 40 inches of water;
 b. Navigable drainage ditches that originally were not navigable before ditching;
 c. Navigable drainage ditches that had no previous stream history; or
 d. Other navigable artificial waterways rather than just drainage ditches.
 2. If the answer to question no. 1 is yes, is it necessary that the navigable artificial waterway be connected to a navigable natural lake or stream before the Department has jurisdiction under the above statutory provisions? *Page 495 
 3. Are the provisions of sec. 31.33, Wis. Stats., relating to the construction of dams on nonnavigable streams applicable to nonnavigable artificial waterways?
In a subsequent, related opinion request you ask:
 1. Is a permit or contract pursuant to sec. 30.20, Wis. Stats., necessary for maintenance dredging of navigable natural or artificial bodies of water?
 2. If the answer to the first question is in the affirmative, and in light of sec. 88.63, Wis. Stats., is a permit necessary pursuant to sec. 30.20, Wis. Stats., for maintenance dredging of drainage ditches? Should a distinction be made between ditches located in active versus inactive drainage districts?
In considering your questions, I have particularly noted the policy of the Wisconsin legislature concerning the state's waters as set forth in ch. 614, Laws of 1965. Section 1 of that law, codified as sec. 144.025 (1), Stats., states:
 "The purpose of this act is to grant necessary powers and to organize a comprehensive program under a single state agency for the enhancement of the quality management and protection of all waters of the state, ground and surface, public and private."
Two points are important here: the emphasis the legislature has given to protecting water quality, and the intent that a single agency have jurisdiction over the waters of the state.
Chapter 30, ch. 31, and sec. 87.30 relate to Department of Natural Resources regulation of activities affecting the waters of the state.
A key issue implicit in your questions is if, and under what circumstances, navigable drainage ditches and other artificial waterways can be included in the waters protected by the aforementioned policies, particularly with regard to those statutes.
The legislature has defined "navigable waters" as:
 ". . . Lake Superior, Lake Michigan, all natural inland lakes within Wisconsin and all streams, ponds, sloughs, flowages and other waters within the territorial limits of this state including *Page 496 
the Wisconsin portion of boundary waters which are navigable under the laws of this state."
This definition is part of the "Navigable waters protection law," the policy of which is set forth in sec. 144.26 (1), Stats.:
 "To aid in the fulfillment of the state's role as trustee of its navigable waters and to promote public health, safety, convenience and general welfare, it is declared to be in the public interest to make studies, establish policies, make plans and authorize municipal shoreland zoning regulations for the efficient use, conservation, development and protection of this state's water resources. The regulations shall relate to lands under, abutting or lying close to navigable waters. . . ."
The state's clear and overriding responsibility to protect navigable waters necessarily extends to other lands and waters which affect the navigable waters. This, in my opinion, was the intent of the legislature in enacting statutes, including secs. 59.971,[5] 88.31[6] and 30.19,[7] Stats., meant to regulate lands adjacent to navigable waters.
You ask your first question in terms of the history of the ditch. If the ditch was originally a navigable stream, the state has jurisdiction. The state holds the beds of navigable waters in trust for all the people; it cannot give up this responsibility voluntarily, nor can it be taken from the state. Priewe v.Wisconsin State Land and Improvement Co. (1889), 103 Wis. 537,79 N.W. 780; Village of Pewaukee v. Savoy and another (1889),103 Wis. 271, 79 N.W. 436.
If the navigable ditch was originally a nonnavigable water or had no stream history, the jurisdiction of the Department of Natural Resources depends on the specific facts of each situation.
The connection of a navigable artificial waterway to a navigable natural lake or stream to which you allude in your second question is pertinent in this context.
I refer you to OAG 17-74, dated March 6, 1974, which states that artificial streams, including drainage ditches, which connect to *Page 497 
navigable natural lakes and streams, are included in the "other waters" mentioned in sec. 144.26 (2) (d), above.
Thus it is my opinion that a ditch connected by a watercourse to a navigable water is subject to the jurisdiction of the Department of Natural Resources, regardless of navigability before or after ditching, or of previous stream history, subject to the narrow exemption of sec. 30.19 (1) (d) for agricultural activities mentioned in sec. 30.19, Stats.
This very narrow exemption means only that a permit is not required for any of the activities listed in sec. 30.19 if the purpose is agricultural use of land. However, once built, and once connected to a navigable water or otherwise made navigable, the ditch is subject to all other provisions of the statutes.
Section 88.31 (1), Stats., provides for special procedures by drainage boards in cases affecting navigable waters:
 "If it appears to the board from its investigation or from the hearing held on the petition that it will be necessary to enter upon any waters that may be navigable, or to acquire and remove any dam or obstruction therefrom, or to clean out, widen, deepen, or straighten any stream that may be navigable, the board shall file with the department of natural resources an application for a permit to do such work. . . ."
It is my opinion that the special or specific statute herein involved, sec. 88.31, Stats., which provides no agricultural exemption for work done by drainage districts on navigable waters prevails over the general statute, 30.19, Stats., which does provide an exemption for agricultural uses of land. The agricultural exemption authorized to individuals under sec.30.19, Stats., does not extend to work done by or authorized by drainage districts pursuant to ch. 88, Stats.
You also inquire whether or not drainage districts are subject to the provisions of sec. 87.30, Stats., entitled "Flood plain zoning."
I refer you once again to OAG 17-74 where we read:
 "Interpreting the statute to allow counties to include navigable drainage ditches in the County Shoreland and Flood Plain Zoning is consistent with the stated purposes of the statute to further the maintenance of safe and healthful conditions and *Page 498 
prevent and control water pollution. To accomplish these purposes, no valid distinction can be drawn between natural and artificial streams, . . ."
 The navigability of the ditch is not important, nor is the connection of its floodplain with a navigable water, as the scope of sec. 87.30 is not limited to navigable waters.
 Artificial waterways including ditches which are connected to navigable natural lakes or streams take on the same characteristics as navigable natural streams, as indicated in OAG 17-74. Thus, in answer to the last part of your first question, the foregoing discussion applies not just to drainage ditches, but to other artificial waterways as well.
 In answer to your second question, a navigable artificial waterway must be connected to a navigable natural lake or stream in order to be subject to the jurisdiction of the Department of Natural Resources.
 Drainage ditches or other artificial waterways without connection to a navigable natural body of water, even though navigable themselves, are the equivalent of private, artificial lakes. Section 144.26 (2) (d), Stats., specifically includes natural lakes in its definition of navigable waters protected by the state. But the beds of private, artificial lakes, such as stock ponds, are not subject to the jurisdiction of the Department of Natural Resources, even if navigable. Mayer v. Grueber (1965), 29 Wis.2d 168, 138 N.W.2d 197. Unconnected ditches fall into this category.
 You further inquire concerning the applicability of the provision in sec. 31.33, Stats., relating to the construction of dams on nonnavigable streams to nonnavigable artificial waterways. The relevant language of sec. 31.33 provides that:
 ". . . all dams heretofore or hereafter erected or constructed on streams not navigable in fact for any purpose whatsoever, shall be subject to and regulated and controlled, so far as is applicable, by ss. 31.02, 31.12, 31.18, 31.19, 31.20, 31.25, 31.26, and 196.665, . . ." *Page 499 
Section 31.02, Stats., entitled "Powers of department," provides that:
 "(1) The department, in the interest of public rights in navigable waters or to promote safety and protect life, health and property may regulate and control the level and flow of water in all navigable waters . . ."
In accordance with that authority, secs. 31.12, 31.18, etc., are applicable insofar as is necessary to protect navigable waters and to protect owners of flooded lands.
In harmony with the legislative policy of protecting navigable waters, the provisions of sec. 31.33 are applicable to dams on nonnavigable artificial waterways where there may be an impact on navigable streams.
In your second opinion request you ask if a permit or contract pursuant to sec. 30.20, Stats., is necessary for maintenance dredging of natural or artificial bodies of water.
This section was created by ch. 614, Laws of 1965, and must be construed in conjunction with the other provisions of that law, including the definitions of navigable waters and the statement of legislative purpose set forth therein. (See earlier discussion.) Consistent with these provisions, it is my opinion that a contract as specified by sec. 30.20 (2) (a) is required for removal of material by dredging from the bed of any natural lake or outlying water (designated by sec. 29.01 (4), Stats.) of the state.
A permit is required by sec. 30.20 (2) (c) for maintenance dredging of navigable natural and artificial streams, including drainage ditches connecting with navigable waters. A permit for removal of material from the bed of an artificial lake with no natural lake or stream history and no connection with another navigable water is not required.
Section 88.63, Stats., to which you allude in your last question, simply makes it the duty of the drainage board to maintain the ditches. A drainage district is a "person" in Wisconsin for purposes of interpreting the statutes. Sec. 990.01
(26), Stats. It is necessary for the district to apply to the Department of Natural Resources for a *Page 500 
permit to remove material from the beds of the ditches, just as it is necessary for any individual or municipality to do so.
Finally, you ask, "Should a distinction be made between ditches located in active versus inactive drainage districts?"
Section 31.02 (6), (7), (8), (9), Stats., specifically place in the Department of Natural Resources responsibility regarding drainage districts. The department is to confer with drainage commissioners and consider their suggestions, but "the final decision in all matters under consideration shall rest with the department." Sec. 31.02 (8), Stats.
Section 88.82, Stats., provides for the dissolution of drainage districts; sec. 88.82 (5) provides that:
 "Any drains which have been constructed by a drainage district dissolved under this section or under prior law shall remain common waterways for the use of all landowners in the dissolved district. Any such landowner may make repairs thereto at his own expense. . . ."
In addition, sec. 31.02 (7), Stats., provides that the department shall confer with a committee appointed by the county board,
 ". . . in the event that the drainage district is dissolved, to represent the interests of the county in all matters whatsoever pertaining to water conservation and control within the area which theretofore constituted such drainage district."
Read together, as I believe they must be in order to make the whole body of law in this area consistent, these statutes give the Department of Natural Resources the authority to confer with a county committee regarding dissolved drainage districts; the department has final decision-making authority, and landowners are authorized to make repairs. However, the fact that the drainage district is dissolved, or inactive, in no way detracts from the obligation of any person, county, or municipality to apply for and receive a permit from the Department of Natural Resources before dredging a navigable ditch or one that affects navigable waters.
RWW:SBW
[1] Prohibiting the placement of any material or structure on the bed of any navigable water where no bulkhead line has been established or beyond a bulkhead line where one is established without a permit from DNR.
[2] Relating to the diversion of water from lakes or streams and prescribing the guidelines and procedures for obtaining diversion permits from DNR.
[3] Prohibiting, without a DNR permit, any construction, dredging or any work with respect to any artificial waterway, canal channel, ditch, lagoon, pond, lake or a similar waterway to connect the same to an existing or natural body of navigable water and prohibiting (with exception) grading or removing topsoil from the bank of any body of navigable water without a permit from DNR.
[4] Prohibiting the removal of any material from the bed of any navigable lake or outlying water or from the bed of any other lake or stream without a DNR permit and prescribing how such permits may be obtained.
[5] Granting to counties the authority to enact shoreland zoning in conformity with he objectives stated in sec. 144.26 (1) 1 Stats.
[6] Specifying the procedure and guidelines applicable when a drainage district board seeks authority from DNR to work on navigable waters.
[7] Supra, f.n 3. *Page 501